**In re Annie JACKSON, Debtor.**

**Bankruptcy No. 88 B 05051.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 8, 1988.

Katherine Harvey, Oak Park, Ill., for debtor.

John F. Brennan, Jaros, Tittle & O'Toole, Chicago, Ill., for Talman Home Sav.

### MEMORANDUM OPINION AND ORDER

RONALD S. BARLIANT, Bankruptcy Judge.

This Chapter 13 case is before the Court for a hearing on confirmation of the Debtor's plan and on the motion of Talman Home Federal Savings and Loan Association to dismiss the case. This Court finds that the present plan is an attempt to achieve a purpose forbidden by Congress, and for that reason cannot satisfy the good faith requirement of 11 U.S.C. § 1325(a)(3). Therefore, confirmation is denied and the case is dismissed.

The factual allegations made in Talman's motion have not been controverted, and additional facts came out at the hearing of these matters or appear from the Debtor's filings. The Debtor and her husband, Melvin Jackson, together with their three children, live in a house subject to a 1979 first mortgage held by Talman in the original amount of $21,900. According to the Debtor's schedules, there is now a $21,123.00 principal balance due on that mortgage and a $7,894.00 arrearage. The Debtor and her husband are both mortgagors under the Talman mortgage.

This is the fourth Chapter 13 petition filed by the Debtor and her husband since 1982. Melvin Jackson filed the first case in September, 1982. That case was converted to a Chapter 7 case and Mr. Jackson received a discharge in 1984.[1]

---

1. Talman's motion states that Mr. Jackson and his wife are both liable under the note. If Mr. Jackson received a Chapter 7 discharge and there was no reaffirmation of the mortgage debt, it is doubtful that Mr. Jackson has personal liability. That question, however, it not relevant to the issues here. It does not appear that

The Debtor filed the second of the Jacksons' four Chapter 13 petitions in December, 1983. After a fourteen month default in post-petition mortgage payments, Talman obtained relief from the automatic stay in February, 1987. According to representations made in Court, Mrs. Jackson's 1983 Chapter 13 case was eventually dismissed.

The third case was filed by the Debtor's husband in April, 1987, the stay was again lifted for failure to make post-petition mortgage payments and that case was dismissed in February, 1988. A month later, the present case was filed.

■ The Bankruptcy Code permits a Chapter 13 debtor to cure a home mortgage arrearage within a "reasonable time". 11 U.S.C. § 1322(b)(5). In no event, however, may plan payments extend more than five years. 11 U.S.C. § 1322(c). Therefore, in every case a "reasonable time" must be five years or less.

According to Talman's motion, all the plans proposed by the Debtor and her husband, including Mr. Jackson's September, 1982 plan, proposed curing the arrearage under the Talman mortgage in 24 months. Yet, if this Court were to confirm the present plan, the Debtor and her husband jointly would have been allowed about seven and a half years to cure the arrearage.[2] Thus, the Jacksons' would have achieved in four cases (the first three of which failed) what Congress has prohibited a debtor from doing in one case.

Attempts to use serial filings to achieve purposes otherwise unattainable under the Bankruptcy Code have been characterized as "bad faith" by other Courts. *Matter of Troutman*, 11 B.R. 108 (Bankr.E.D.N.Y., 1981); *In re Diego*, 6 B.R. 468 (Bankr.N.D. Cal.1980). In those cases, the debtors obtained Chapter 7 discharges of their unsecured, dischargeable debts, and then filed Chapter 13 petitions to restructure their secured and non-dischargeable debts. Those serial Chapter 7 and 13 filings would have had the same result as Chapter 13 plans proposing no payments to unsecured creditors, which would have been non-confirmable at least in those courts at those times. As the *Troutman* Court said,

> Here the Debtor's are attempting to accomplish in two proceedings what they could not accomplish in one. They have used Chapter 7 to discharge their unsecured debts and now seek to use Chapter 13 to deal with their secured creditors. Had they combined the two proceedings into one under Chapter 13, confirmation would have been denied since their plan would have offered no payments to unsecured creditors.

11 B.R. at 109. For those reasons, the plans in *Troutman* and *Diego* were held to be in bad faith.[3]

Here, the Debtor maintains that she is acting in good faith. She states that she and her husband are making every effort to save their home after various financial misfortunes caused them to fall in arrears. She also states that her circumstances have changed in that one of her three children is now employed and able to make a contribution to the household. (The Debtor's budget does not reflect any such contribution from a child but only reflects a $290 per month contribution from the Debtor's husband.)

This Court has no reason to doubt that the Debtor and her husband are sincere in their efforts to keep their house and that, if they could, they would satisfy their obligation to Talman. Certainly, Chapter 13 of the Bankruptcy Code is designed to afford a second chance to people like the Jacksons

the present Debtor, Mrs. Jackson, has ever been discharged.

**2.** The first case was filed in September, 1982. The plan now under consideration proposes to satisfy the arrearage in two years, or by about May, 1990.

**3.** Other courts have held that multiple filings for the purpose of delaying secured creditors evidenced an absence of good faith. *In re Kinney*, 51 B.R. 840 (Bankr.C.D.Cal.1985) (10 petitions within 25 months); *In re Jones*, 41 B.R. 263 (Bankr.C.D.Cal.1984) (6 petitions within two years). This Court elects not to rely on that ground, although it is clear that Talman has been seriously delayed in the exercise of its rights.

when they encounter financial difficulties. But, the Bankruptcy Code also imposes limits upon the power of debtors to reorganize at the expense of creditors, particularly secured creditors.

 Good faith is not synonymous with honesty and bad faith is not synonymous with dishonesty. But if the good faith requirement of Section 1322 means anything, it means that the proposed plan cannot be a device to avoid the limitations imposed by the Bankruptcy Code itself. The good faith requirement "is meant to bar the confirmation of a chapter 13 plan ... where the proposed plan, if consummated, would contravene the spirit of Chapter 13." H.R.Rep. No. 1195, 96th Cong., 2d Sess. 24 (1980). Although the plan proposed here, looked at in isolation, appears to comply with the spirit and purposes of Chapter 13, when viewed in combination with the prior filings, the effect would be the circumvent of statutory limitations on the powers of Chapter 13 debtors to compromise the rights of secured creditors.

Confirmation of the Debtor's Chapter 13 plan is therefore denied and this case is dismissed.