In re Larry THOMAS dba American Tile Maintenance, Debtor.

Bankruptcy No. 90–13017FM.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Jan. 24, 1991.

Frederick E. Walker, F.E. Walker and Associates, P.C., Austin, Tex. for debtor.

Ray Hendren, Austin, Tex., trustee.

## MEMORANDUM OPINION ON FIVE YEAR PLANS PROPOSED IN SERIAL CHAPTER 13 FILINGS

FRANK R. MONROE, Bankruptcy Judge.

On December 13, 1990, the Court held the confirmation hearing on the Debtor's Chapter 13 Plan in the above-referenced bankruptcy case. The Chapter 13 Trustee opposed the Debtor's confirmation as the Debtor had a prior Chapter 13 case which had recently been dismissed for material default in plan payments. The Court has considered the pleadings, the evidence, the arguments of counsel and the Chapter 13 Trustee, briefs of the parties, its own independent review of the files of both cases, and its own independent legal research.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and (b)(1), and the Standing Order of Reference issued in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

This memorandum opinion shall constitute Findings of Fact and Conclusions of Law in conformity with Bankruptcy Rule 7052.

### Findings of Fact
#### THE ORIGINAL CHAPTER 13 CASE

1. On April 2, 1989, the Debtor filed a Chapter 13 case styled, Larry Thomas dba American Textile Maintenance, Case No. 89–10974LK.

2. The Plan was confirmed on July 21, 1989, and proposed to fully pay priority debts in the amount of $21,500.00, secured debts in the amount of $11,995.00, and class one and class two allowed unsecured creditors, and partially pay class three allowed unsecured claims 27%. Monthly payments of $500.00 for months one and two; $500.00 for the months of November, December, January and February; and $1225.00 for all other months for sixty (60) months were proposed.

3. Feasibility rested on the Monthly Family Budget attached to the Plan which estimated the total amount of future monthly expenses as $12,487.00, and the total amount of future income as $13,500.00.

4. On June 28, 1990, the Chapter 13 Trustee filed a Motion to Dismiss ("Motion") the case for material default in plan payments. The Debtor filed a Response to the Motion on July 3, 1990, which was heard on August 27, 1990. An Order

granting the Motion was filed August 27, 1990.

5. In the interim, on August 15, 1990, the Debtor filed a Motion to Modify Chapter 13 Plan Decreasing Payments and an Amended Chapter 13 Plan which sought a reduction in monthly payments from $1225.00 to $850.00 per month beginning July, 1990, which would have decreased the gross amount under the Plan going to creditors from $57,550.00 to $47,250.00, and resulted in a reduction of the percentage going to class three unsecured creditors from 27% to 7%.

6. An Order Permanently Modifying Chapter 13 Plan Decreasing Payments was signed by Judge Larry E. Kelly on September 23, 1990; however, the case had previously been dismissed and this Order was of no effect. Of interest to the Court, however, is that the Amended Plan contained secured claims in the amount of $106,924.86 (up from $11,995.00 in the original Plan), a new special class of claims in the amount of $12,300.00 and priority claims of $10,122.36. In addition, the Amended Plan listed the Debtor's total future monthly expenses as $12,625.00, and the Debtor's total future monthly income as $13,500.00.

### THE SECOND CHAPTER 13 CASE

7. On September 28, 1990, one month after the first Chapter 13 case was dismissed, the Debtor filed the present Chapter 13 case.

8. The petition listed priority debts in the amount of $45,522.32 (up from $10,122.36 as set forth in the Amended Plan filed 53 days earlier), secured debts in the amount of $124,655.84 (up from $106,924.86 as set forth in the Amended Plan filed 53 days earlier), and unsecured debts in the amount of $21,863.93.

9. The Plan proposes to pay priority claims and to pay class one and class two allowed unsecured creditors in full, and to pay 5% to class three allowed unsecured creditors, by making monthly payments of $1,500.00 for a total of sixty (60) months (up from $850.00 in the Amended Plan filed 53 days earlier and $275.00 more than the payment the Debtor was unable to make

under its original Plan in the first Chapter 13 case).

10. The Monthly Family Budget attached to the Petition estimates the total amount of future monthly expenses as $17,499.50, and the total amount of future income as $19,000.00 (significantly different than that filed 53 days earlier in the prior case).

### Issue

1. What is the maximum number of months that the Debtor's Plan can last, i.e. 60 months or 60 months minus the number of months he spent under his plan in the prior Chapter 13 case unsuccessfully dealing with essentially the same debts?

### Conclusions of Law

The Bankruptcy Code provides that,

"[t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years."

11 U.S.C. § 1322(c).

*Collier's* interprets this section as follows:

"[s]ection § 1322(c) is new. Under Chapter XIII of the Bankruptcy Act, there was no limit placed on the duration of a Chapter XIII plan, but the practice of proposing extension wage earner plans of not less than three years' duration became widespread and many extended much longer.

Under Chapter 13, no plan, including subsequent modifications, may propose payments over a period of more than three years, unless the court, for cause shown, authorizes the debtor to propose a plan, including any modifications, calling for payments extending up to five years. No chapter 13 plan may propose payments over a period of more than five years under any circumstances. The rationale underlying section 1322(c) is clearly expressed in the House Judiciary Committee Report.

'On the other hand in certain areas of the country, inadequate supervision

of debtors attempting to perform under wage earner plans have (sic) made them a way of life for certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude'."

5 *Collier on Bankruptcy*, para. 1322.15 (15th ed. 1990).

■ The congressional intent behind the statute is clear. In this Court's mind plan payment extensions beyond the five years by the use of serial filings should not be allowed where to do so would be to permit the Debtors to do in two cases what Congress has specifically prohibited in one case.

There are few published cases discussing § 1322(c) in the context of serial filings. However, one court has stated that,

"[i]t is a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to refile a second case. *In re Jackson*, 91 B.R. 473 (Bankr.N.D.Ill.1988)."

*In re McKissie*, 103 B.R. 189, 192 (Bankr. N.D.Ill.1989).

In *Jackson* the Debtors, between them, had filed four Chapter 13 cases in six years. The first case was filed by the husband and converted to Chapter 7. The husband received a discharge in that case. The second case was filed by the wife and was dismissed after approximately three years. The third case was filed by the husband one month after the secured creditor had lifted the stay in the second case. Once again, the secured creditor obtaining relief from the stay when only a month later the wife again filed. The secured creditor held the first mortgage on the Debtors' home which, by the time of the fourth filing, was now $7,894.00 in arrearages. The plans in all four cases proposed to cure the arrearages in twenty-four (24) months. However, the combined total of time allowed under all the plans would have been seven and one-half years to cure the arrearages.

The Court denied confirmation and dismissed the case. In doing so it held in pertinent part that,

"[t]he Bankruptcy Code permits a Chapter 13 debtor to cure a home mortgage arrearage within a 'reasonable time'. 11 U.S.C. § 1322(b)(5). In no event, however, may plan payments extend more than five years. 11 U.S.C. § 1322(c). Therefore, in every case a 'reasonable time' must be five years or less ...

... Yet if this Court were to confirm the present plan, the Debtor and her husband jointly would have been allowed about seven and one-half years to cure the arrearage. Thus, the Jacksons' would have achieved in four cases (the first three of which failed) *what Congress has prohibited a debtor from doing in one case.*

... Attempts to use serial filings to achieve purposes otherwise unattainable under the Bankruptcy Code have been characterized as 'bad faith' by other Courts. (Citations omitted)." (Emphasis added).

*Jackson*, supra at 474.

■ The court adopts that reasoning here. Therefore, this Debtor's Plan, being his second five year plan, can not be confirmed as, combined with the Plan in his immediately preceding Chapter 13 case (this one having been filed serially), the total plan payment period exceeds five years. To rule otherwise would allow this Debtor to gain from his prior default. To rule otherwise would open the door for exactly what Congress sought to avoid, i.e. manipulation of the Bankruptcy Code provisions through defaults, dismissals and serial filings to obtain what was prohibited to do in one single case.

## CONCLUSION

The Debtor's Plan may not propose a payment term longer than sixty (60) months less the number of months he operated under his previous plan and provided payments.

This Opinion is without comment to the obvious feasibility and probably bad faith issues concerning the Plan. A separate

Order of even date herewith will be entered.