**In re Sharon OGLESBY.**

**Civ. A. No. 93–2579.**

United States District Court,
E.D. Pennsylvania.

Aug. 13, 1993.

Mary Jeffery, Spear, Wilderman, Borish, Endy, Browning & Spear, Philadelphia, PA, for debtor.

Sharon Oglesby, pro se.

Michael T. McKeever, Shapiro & Kreisman, Nicholas J. Scafidi, Berwyn, PA, for Associates Nat. Mortg. Corp.

Frederic Baker, Philadelphia, PA, trustee.

Edward Sparkman, Philadelphia, PA, trustee.

## MEMORANDUM

DALZELL, District Judge.

Associates National Mortgage Corporation ("Associates") filed two appeals stemming from the bankruptcy court's disposition of Sharon Oglesby's Chapter 13 case. We consolidated the appeals for purposes of review.

Associates appeals the bankruptcy court's decision in the adversary proceeding Oglesby filed against Associates for a determination, pursuant to 11 U.S.C. § 506, of the validity, extent and priority of Associates' lien. In addition, Associates appeals the confirmation of Oglesby's plan of reorganization.

## I. *Factual Background and Prior Proceedings*

The underlying facts of this appeal are in all material respects uncontroverted.

Sharon Oglesby initiated this voluntary Chapter 13 bankruptcy proceeding on May 4, 1992, primarily to prevent Associates from foreclosing on her residence at 904 Longacre Boulevard in Yeadon, Pennsylvania ("the property"). This proceeding marks the fourth time that Oglesby has sought refuge within the Bankruptcy Code to halt Associates' imminent foreclosure on her home.

The history of Associates' attempts to foreclose on this property dates back to July 31, 1987, when Associates filed a complaint in mortgage foreclosure in the Pennsylvania Court of Common Pleas for Delaware County. *See* Stipulation of Facts ¶ 10. Associates obtained judgment and scheduled the property for a sheriff's sale on March 8, 1988. *Id.* ¶ 11. On March 3, 1988, Oglesby filed her first Chapter 13 bankruptcy petition, and the bankruptcy court issued an order staying the sheriff's sale. *Id.* ¶ 12. Oglesby ultimately defaulted in payments to Associates and the Chapter 13 Standing Trustee and the bankruptcy court dismissed the case. Oglesby then filed her second Chapter 13 petition in 1989, failed to make payments, and again the bankruptcy court dismissed her case. Oglesby's third Chapter 13 petition, filed in 1991, followed the same pattern as those before it, with the exception that Oglesby converted the case to a Chapter 7 after the bankruptcy court granted Associates relief from the stay. The bankruptcy court then granted Oglesby a discharge in the 1991 bankruptcy, and while the case was still open, Oglesby filed the 1992 Chapter 13 petition that is the subject of this appeal.

Associates immediately filed a motion to dismiss the 1992 case. On May 29, 1992, the bankruptcy court denied this motion, allowing the case to proceed on the condition that Oglesby make adequate protection payments for Associates' benefit pending confirmation of a plan of reorganization.[1]

On September 22, 1992, Oglesby filed an adversary proceeding against Associates under 11 U.S.C. § 506 for a determination of the validity, extent and priority of Associates' lien. The bankruptcy court consoli-

---

**1.** Despite Oglesby's failure to remain current to Associates on this obligation, the bankruptcy court permitted her to propose a confirmable plan of reorganization at the hearing held on January 5, 1993.

dated the adversary proceeding with the Chapter 13 confirmation, and held a hearing on January 5, 1993.

In an opinion and order dated February 11, 1993, the bankruptcy court held in favor of Oglesby in the adversary proceeding. 150 B.R. 620. Pursuant to 11 U.S.C. § 506(a), the Court fixed the secured claim of Associates against Oglesby's home at $60,000. *See* February 11, 1993 Order ¶ 2. Further, it held that any unsecured claim for the balance was discharged in the Chapter 7 bankruptcy proceeding. *Id.* As for Oglesby's Chapter 13 reorganization plan, the bankruptcy court made confirmation of the plan contingent on certain circumstances, including a provision for dismissal in the event Oglesby fails to pay Associates as proposed. *Id.* ¶ 3.

Oglesby amended her plan in compliance with the court's order. Accordingly, on April 6, 1993, the bankruptcy court confirmed Oglesby's amended plan.

Now before us is Associates' appeal of both the February 11, 1993 order, which found in favor of Oglesby in the adversary proceeding, and the April 6, 1993 order, which confirmed Oglesby's Chapter 13 plan of reorganization. For the following reasons, we will remand this case to the United States Bankruptcy Court for further proceedings consistent with this opinion.

II. *Subject(s) of Review*

As a threshold matter, we must determine whether we have jurisdiction to consider an appeal of both the February 11 and April 6 orders.

The district courts have "jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges." 28 U.S.C. § 158(a). A litigant must file a notice of appeal from such decisions within ten days of its date of entry. Bankr.Rule 8002(a). It is undisputed that the April 6 order, which confirmed Oglesby's Chapter 13 plan, is a final order, and that Associates filed a timely notice of appeal. Thus, we have jurisdiction to hear an appeal of that order.

A somewhat more difficult question is whether we have jurisdiction to review those issues which the bankruptcy court decided in its opinion and order entered February 11, 1993. The issue turns on whether the February 11, 1993 order was "final" within the meaning of 28 U.S.C. § 158(a). If so, then it was incumbent on Associates either to file a notice of appeal of this order within the ten day period Rule 8002 of the Bankruptcy Rules of Procedure requires, or, alternatively, petition the bankruptcy judge for an extension of time due to excusable neglect. Associates took neither course of action. It filed a notice of appeal of the February 11 order long after this ten day period had expired. Therefore, if the order is considered final, the time to appeal it has run, and we are disabled from reviewing any of the issues addressed in it, barring the confirmation issues that remain viable under the bankruptcy court's April 6 order. Consequently, if we were to determine that the February 11 order was a final order, we would have no choice but to dismiss the appeal of this order for want of jurisdiction. *See In re Colon,* 941 F.2d 242 (3d Cir.1991).

It is clear that the definition of finality in the context of bankruptcy litigation is broader than the definition that applies in ordinary civil litigation. 16 C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure* § 3926 at 131–32 (Supp.1993). In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that the court must have finally resolved, rather than the entire bankruptcy, for a decision to be final. *See e.g. In re Charter Co.,* 778 F.2d 617 (11th Cir.1985). In *Matter of Kilgus,* 811 F.2d 1112, 1116 (7th Cir.1987), Judge Easterbrook succinctly stated the reasoning behind this broad notion of finality in bankruptcy proceedings:

We tolerate these appeals in part because of the need to tie up the many subsidiary matters that litter the road to the distribution of assets in bankruptcy. A court cannot wait until the end of the case to allow the appeal, because final disposition in bankruptcy ... depends on

prior, authoritative disposition of subsidiary disputes. The separable disputes that can be handled as individual cases may be dealt with as they arise, the better to advance the end of the whole bankruptcy case.

The case before us presents the question whether "failure to take advantage of the opportunity for appeal opened by this expansive concept should forfeit the right to review on appeal from a more conventionally final judgment." 16 C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure* § 3926 at 132 (Supp.1993). We conclude that it should not.

Oglesby argues that because the February 11 order resolved the adversary proceeding, it was a final order as that concept is defined in bankruptcy proceedings. Since Associates did not take an appeal in the time proscribed, it has, so her argument continues, waived its right to appeal. We disagree. To say that Associates *could* have appealed the February 11 order does not necessarily mean that it *had to*.

■ Oglesby cites the Eleventh Circuit case *In re Charter Co., supra*, 778 F.2d 617, in support of her position. This reliance, however, is somewhat misplaced. That decision, as well as similar cases decided in other circuits, was in the context of determining whether a particular order was interlocutory and, thus, not ripe for appeal, rather than, as here, whether an appeal was untimely. Directly on point is Judge Easterbrook's opinion for the Seventh Circuit in *Matter of Kilgus, supra*, 811 F.2d 1112. Although that case was in the context of an appeal from the district court to the appellate court, we find the reasoning applicable to the congruent situation before us. Judge Easterbrook reasoned:

> If we took the view that any order that *may* be appealed in bankruptcy, *must* be appealed on pain of forfeiture of all review, we would be flooded with appeals. Because it has proved impossible to de-

fine exactly the set of orders to be treated as final under § 158(d)[2], litigants would resolve all doubts in favor of instant appeal. The torrent of appeals would inundate the courts of appeals and ultimately retard rather than advance the disposition of the underlying bankruptcy.

*Id.* at 1116 (emphasis in original). Judge Easterbrook went on to hold that the failure to appeal an order in a bankruptcy case should result in forfeiture only if the order meets the more stringent test for finality applied in ordinary civil litigation. *Id.* We find this reasoning persuasive, and we will therefore adopt the *Kilgus* standard and apply it to this case.

■ The February 11 order contemplated future action on the part of both parties. The bankruptcy court conditioned the order's continued effectiveness on Oglesby filing an amended plan that contained five express provisions. *See* February 11 Order ¶ 3. In addition, the order expressly provided that objections could be made after the filing of the as yet unproposed amended plan, and that if the court could not confirm the plan as proposed, it would dismiss the case.

We conclude that in the context of an ordinary civil case, this order would be considered interlocutory and not appealable. *Black's Law Dictionary* (6th Ed.), defines *interlocutory* as:

> Provisional; interim; temporary; not final. An interlocutory order or decree is one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.

*See also In re Merle's Inc.*, 481 F.2d 1016, 1018 (9th Cir.1973). The February 11 order falls squarely within this definition. The order contemplated future action occurring before the matter could in any fair sense

---

2. There is no material difference between this statutory provision, which confers jurisdiction on the courts of appeals, and 28 U.S.C. § 158(a), which establishes our jurisdiction over appeals from the bankruptcy court. 16 C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure* § 3926 at 129 (Supp.1993).

be regarded as finally resolved. It is thus clear that, outside of bankruptcy, Associates could not have appealed the February 11 order; thus, inside bankruptcy, the failure to take an available appeal did not forfeit review.

Accordingly, we conclude that we have subject matter jurisdiction over the issues decided in both the February 11 and April 6 orders.

## III. *Standard of Review*

■ Our scope of review is well-settled. In reviewing the bankruptcy court's orders we sit as an appellate court. 28 U.S.C. § 158(a); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). The bankruptcy court's legal conclusions are subject to plenary review, and we may not set aside the court's findings of fact unless they are clearly erroneous. *Brown*, 851 F.2d at 84.

## IV. *Legal Analysis*

Associates has set forth a litany of objections to the bankruptcy court's orders. The bulk of Associates' arguments are identical to those it originally presented to the bankruptcy court when it opposed confirmation of Oglesby's Chapter 13 reorganization plan. As to these arguments, we are satisfied with the bankruptcy court's treatment of them in its February 11 opinion. Thus, there is no need for us to rehash those issues here. As for those issues that Associates raises here for the first time, we find that only the one concerning 11 U.S.C. § 1325(a)(3)'s good faith requirement warrants discussion.

Oglesby's lengthy history of repetitive bankruptcy filings troubles us. Associates correctly points out that Oglesby has, in effect, structured a reorganization plan that is well over the Bankruptcy Code's five year limit.[3] It argues that Oglesby's bankruptcy history calls into question whether she proposed her Chapter 13 reorganization plan in the good faith that 11 U.S.C. § 1325(a)(3) requires of her.

As we rehearsed in section I, this is Oglesby's fourth bankruptcy filing. The bankruptcy court dismissed the first two Chapter 13 cases when required payments became delinquent. The third case remained open as a converted Chapter 7 case in which the bankruptcy court had already entered a discharge on the date Oglesby filed this, her fourth, Chapter 13 case.

There are few published decisions discussing § 1322(c) in the context of successive filings. One court has stated, however, that "plan payment extensions beyond the five years by the use of serial filings should not be allowed where to do so would be to permit the Debtors to do in two cases what Congress has specifically prohibited in one case." *In re Thomas*, 123 B.R. 552, 554 (Bankr.W.D.Tex.1991). We are hard pressed to think of a more appropriate case than the one before us to test the limits of Chapter 13's good faith requirement.

■ We recognize that there is no *per se* rule against successive filings. A genuine change in circumstances may justify a debtor's multiple filings. *See Matter of Metz*, 820 F.2d 1495, 1498 (9th Cir.1987) (citing *In re Johnson*, 708 F.2d 865, 868 (2d Cir.1983)). An inquiry into whether successive filings should be permitted, however, raises the question of good faith.[4] *See Matter of Metz*, 820 F.2d at 1497; *In re Nash*, 765 F.2d 1410, 1415 (9th Cir.1985); *In re Huerta*, 137 B.R. 356 (Bankr.C.D.Cal. 1992); *In re Thomas*, 123 B.R. at 554. The bankruptcy court must concern itself with whether the debtor is merely trying to frustrate the statutory requirements through a strategy of successive filings in an attempt to abuse the bankruptcy process. *In re Chisum*, 847 F.2d 597, 600 (9th Cir.), *cert. denied, Mortgage Mart, Inc. v.*

---

3. 11 U.S.C. § 1322(c) provides that:
   [t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

4. 11 U.S.C. § 1325(a)(3) provides:

   (a) ... the court shall confirm a plan if—
   (3) the plan has been proposed in good faith and not by any means forbidden by law.

*Rechnitzer,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

Whether the plan is proposed in good faith is a factual determination for the bankruptcy court to resolve. *See Id.; Matter of Metz, supra,* 820 F.2d at 1497. Sitting as an appellate court in this case, it is inappropriate for us to make that factual determination. Although, as Oglesby points out, the bankruptcy court's April 6, 1993 order does hold in conclusory terms that the reorganization plan was proposed in good faith, we find that this conclusion is based on inadequate findings of fact. Accordingly, the bankruptcy court should analyze whether Oglesby's plan is proposed in good faith using the factors discussed below.

The Bankruptcy Code does not define the term *good faith,* nor has our Court of Appeals squarely addressed the issue of its meaning in the context of successively filed bankruptcy petitions. Other courts, however, have developed criteria by which to analyze plans for purposes of determining whether they are proposed in good faith. While there is no one established set of good faith factors, we believe, as did the courts in *In re Huerta, supra,* 137 B.R. at 368, and *In re Schuldies,* 122 B.R. 100, 103 (D.S.D.1990), that a non-exhaustive list of considerations includes:

(1) the length of time between the prior cases and the present one;

(2) whether the successive cases were filed to obtain the favorable treatment afforded by the automatic stay;

(3) the effort made to comply with the prior case plans;

(4) the fact that Congress intended the debtor to achieve its goals in a single case; and

(5) any other facts the court finds relevant relating to the debtor's purposes in making successive filings.

Additionally, the bankruptcy court should not lose sight of the totality of the circumstances surrounding the filing to determine whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. *See Matter of Metz, supra,* 820 F.2d at 1498; *Flygare v. Boulden,* 709 F.2d 1344, 1347 (10th Cir.1983). Once the bankruptcy court has made these findings, its conclusion can then be examined on appeal under the clearly erroneous standard of review. *See Matter of Metz, supra,* 820 F.2d at 1497; *In re Baker,* 736 F.2d 481, 482 (8th Cir.1984); *Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983); *In re Slade,* 15 B.R. 910, 911 (9th Cir. BAP 1981).

## V. *Conclusion*

We realize that our decision today adds yet another delay to the resolution of this saga. At the same time, however, we are mindful of the limits of our scope of review when we sit as an appellate court in bankruptcy cases. Although we are dubious whether Oglesby filed her Chapter 13 case in good faith, this determination, in the first instance, is not ours to make.

We will therefore remand this case to the United States Bankruptcy Court for further proceedings consistent with this opinion. An appropriate Order follows.

## *ORDER*

AND NOW, this 13th day of August, 1993, upon consideration of the appellant's brief, the appellee's brief, and the appellant's reply, it is hereby ORDERED that the bankruptcy court's orders of February 11 and April 6, 1993 ARE VACATED and these matters shall be REMANDED to the United States Bankruptcy Court for further proceedings consistent with this opinion.