**In re Sharon OGLESBY a/k/a Sharon Cofey a/k/a Sharon Simmons a/k/a Sharon Council, Debtor.**

**Bankruptcy No. 92–12736DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 22, 1993.

---

Mary Jeffery, Philadelphia, PA, for debtor.

Nicholas J. Scafidi, Shapiro & Kreisman, Berwyn, PA, Atty., Michael T. McKeever, Berwyn, PA, Prior Atty., for Associates Nat. Mortg. Co.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

In an appeal from our confirmation of the First Amended Chapter 13 Plan ("the Plan") filed by SHARON OGLESBY, a/k/a Sharon Cofey, Sharon Simmons, and Sharon Council ("the Debtor"), including certain protections for the appellant-mortgagee of the Debtor's home, ASSOCIATES NATIONAL MORTGAGE CO. ("Associates"), required by our prior Opinion reported at 150 B.R. 620, 628 (Bankr.E.D.Pa.1993) ("Opinion I"), the district court ("the Court") in a Memorandum reported at 158 B.R. 602 (E.D.Pa.1993) ("Opinion II"), vacated the confirmation order and remanded the matter to us to ascertain the Debtor's "good faith." The Court expressed particular concern about the fact that this case represented the Debtor's fourth bankruptcy case between 1988 and the present.

We note that the scales of repetition are evened by the fact that the instant remand provides Associates with its fourth opportunity to raise the issue of whether the Debtor has been proceeding in "good faith." Applying the Court's good faith test, which we are required to do in light of the remand, we find that the totality of circumstances indicates that this case was filed in good faith and the Plan was conceived in good faith. The latter conclusion is supported most strongly by (1) the fact that the Court agrees that the Plan is feasible and otherwise confirmable; and (2) the Debtor, on remand, has poignantly

described her severe health problems and socio-economic factors which prompted her multiple filings.

## B. *PROCEDURAL AND FACTUAL HISTORY PRIOR TO REMAND*

The history of this case and the Debtor's prior three cases is recited in Opinion I, 150 B.R. at 622–24. Familiarity with that recitation is assumed, although some of the facts are recast herein in light of the present issues before us, and new information is provided in light of subsequent developments.

The Debtor filed the instant voluntary Chapter 13 bankruptcy case on May 4, 1992, admittedly primarily in an attempt to preserve 904 Longacre Boulevard, Yeadon, Delaware County, Pennsylvania ("the Home"), as a residence for herself, eleven dependent children, and two dependent grandchildren.

The first opportunity of Associates to raise the issue of whether the instant case was filed in good faith was in a motion to dismiss this case which it filed just eight days after the filing of this bankruptcy case, on May 12, 1992, on the ground that the Debtor had not complied with payment directives in her past three bankruptcy cases and should not be given any further opportunities to do so.

On the day following a hearing, we entered an Order of May 29, 1992 ("the May Order"), denying this motion on the condition that the Debtor make monthly payments of $2,192 to the Trustee for Associates' benefit pending confirmation and promptly achieve confirmation of a plan of reorganization.

No appeal from the May Order was taken, which arguably established the conclusion that dismissal of the case on grounds that it was filed in bad faith was *res judicata,* or at least the law of the case, as long as the conditions set forth in the May Order were satisfied. In any event, as we shall come to see, this issue never resurfaced in this court until after the remand of this case following Opinion II.

On September 22, 1992, the Debtor filed an adversary proceeding at Adv. No. 92–1002DAS ("the Proceeding") against Associates under 11 U.S.C. § 506, seeking a determination of the validity, extent, and priority of Associates' lien. Trial of the Proceeding was eventually scheduled, in conjunction with a hearing to consider confirmation of the Debtor's then-current Chapter 13 plan, on January 5, 1993. Although this juncture constituted its second opportunity to do so, Associates did not reiterate the Debtor's lack of good faith, either in filing the case or in proposing her Plan, as one of its objections to confirmation.

In Opinion I, dated February 11, 1993, this court decided and held in favor of the Debtor in the Proceeding. Pursuant to 11 U.S.C. § 506(a), we fixed the value of the Home and the secured claim of Associates against it at $60,000, and determined that the Debtor's proposed monthly payments of only $1,107.78 to Associates were sufficient to satisfy this claim in a plan. We also held, *inter alia,* that the Debtor was not estopped from claiming that the Home was worth only $60,000 by her declarations, in her Schedules in this case, and her attempts at paying considerable more in prior cases, that the Home was worth $100,000. Most prominent of our other holdings was that the Debtor's Chapter 13 reorganization plan would be deemed feasible if and only if it included a provision for summary dismissal, barring a refiling for 180 days, in the event that the Debtor failed to pay Associates as proposed in her plan in the first 24 months after confirmation. The Plan in issue, filed on February 19, 1993, was devised from adherence to these conditions set forth in Opinion I.

We allowed Associates until March 12, 1993, to file Objections to the Plan. Thus, Associates was presented with its third chance to raise the good faith/multiple filings issue(s). However, despite reiteration of numerous prior objections addressed and rejected in Opinion I, the issues of multiple filings and lack of good faith were not linked in any Objections filed by Associates at that time. In one paragraph, Associates did object to the five-year length of the Plan in light of the Debtor's prior bankruptcies. The term "good faith" was invoked, however, only in the following passage:

> 9. Debtor's plan has not been proposed in good faith as the Debtor has not fully accounted for payments to all creditors

and may pay certain creditors on a more favorable basis without fully disclosing that intention in her plan.

At the confirmation hearing of March 18, 1993, scheduled pursuant to the Order accompanying Opinion I, we advised Associates that, in light of its failure to appeal Opinion I, we appeared to be bound by *res judicata* from sustaining the repetitious objections, if not strongly inclined to reach the same result under "the law of the case" doctrine. *See, e.g., In re River Village Associates,* 161 B.R. 127 (Bankr.E.D.Pa.1993) (the "law of the case" dictates that courts will reopen prior decisions in the case only if they were "clearly erroneous" or would "work a manifest injustice"). Although the confirmation order should have been entered ministerially by the clerk's office immediately after the March 18, 1993, hearing, for some unknown reason its entry was delayed until April 6, 1993.

The Court initially discussed at length, Opinion II, 158 B.R. at 604–07, the issue of whether the appeal from the Order accompanying Opinion I, filed on April 8, 1993, was timely. The Court concluded that the entire Order accompanying Opinion I, including the decisions in the Proceeding, was appealable.[1]

The Court begins the "Legal Analysis" included in Opinion II with the following passage, 158 B.R. at 606:

> Associates has set forth a litany of objections to the bankruptcy court's orders. The bulk of Associates' arguments are identical to those it originally presented to the bankruptcy court when it opposed confirmation of Oglesby's Chapter 13 reorganization plan. As to these arguments, we are satisfied with the bankruptcy court's treatment of them in its February 11 opinion. Thus, there is no need for us to rehash those issues here. As for those issues that Associates raises here for the first time, we find that only the one concerning 11 U.S.C. § 1325(a)(3)'s good faith requirement warrants discussion.

Before beginning our treatment of the issues remanded to us, it is important to consider, first, what was decided in Opinion I which was affirmed in this passage. The first issue discussed in depth in Opinion I, 150 B.R. at 624–25, was whether the Debtor could bifurcate Associates' claim into a secured claim in the amount of the value of the Home and an unsecured claim for the balance, especially because the Debtor was only an assignee of the original mortgage taken by Associates in the home-purchase transaction.

At the time that Opinion I was filed, the use of 11 U.S.C. § 506(a) to "cram down" a mortgage to the value of a home, notwithstanding the prohibition of "modification" of a claim secured only by a home mortgage set forth in 11 U.S.C. § 1322(b)(2), was controlled by settled Third Circuit law, *Sapos v. Provident Institution of Savings in Boston,* 967 F.2d 918, 925–26 (3rd Cir.1992); and *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 126–28 (3rd Cir.1990). However, during the pendency of this appeal, on June 1, 1993, *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), was decided, which held that 11 U.S.C. § 1322(b)(2), where applicable, prohibited utilizing § 506(a) in Chapter 13 cases in this fashion.

■ We note that the subsequent Opinions of the district court in *In re Hammond,* 156 B.R. 943, 945–48 (E.D.Pa.1993); and of this court in *In re Hirsch,* 155 B.R. 688 (Bankr. E.D.Pa.1993), hold that the inclusion of a security interest in certain personal property takes a mortgage outside of the scope of § 1322(b) and the holding of *Nobelman.* Associates took a security interest in the oven, dishwasher, and fan vent in the Home, as well as rents, issues, and profits therefrom.

---

1. For what it is worth, we believe that the Court was correct in concluding that the issues relating to confirmation of the plan in the Debtor's main case were interlocutory and appealable, but we would seriously question this conclusion if it had been applied to the rulings in the Proceeding. A proceeding is a separate "case within a case" and appeal deadlines separate from the main case should run from the date of entry of the order in such a matter. The fact that the Court was prepared to affirm, without discussion, the rulings in the Proceeding, particularly the Debtor's use of 11 U.S.C. § 506(a) to reduce the amount of Associates' secured claim, appears to explain its decision in this respect. It also results in our agreement that the appeal from the only issues on which the Court remanded this matter to us was in fact timely.

Hence, pursuant to the holdings in *Hammond* and *Hirsch*, the mortgage was not within the scope of § 1322(b)(2). However, given the uncertain state of law when Opinion II was drafted, it was significant that this Opinion affirmed that aspect of Opinion I.

Second, we held that the Debtor was not estopped from cramming Associates' mortgage down to the "new" appraisal figure of the Home of $60,000, despite the Debtor's earlier contention, in her Schedules and the beginning stages of this case, and in her prior cases, that the Home was worth $100,000. Opinion I, 150 B.R. at 625-26. While the law in this area was rather clear, this holding was very important in the context of the Plan. It justified the Plan's significant reduction of the monthly payments necessary to liquidate Associates' claim from the $2,192 figure referenced in the May Order to the $1,107.78 figure recited in the Plan.

Third, Opinion I, *id.* at 626-27, held that the nine (9%) percent deferred interest figure utilized by the debtor in her plan was sufficient under 11 U.S.C. § 1325(a)(5)(B)(ii), following the standards for measurement of same set forth in our prior decision in *In re Mitchell*, 77 B.R. 524 (Bankr.E.D.Pa.1987). This decision was, again, important to establishing that the $1,107.78 monthly payment figure was appropriate. Legally, the *Mitchell* holding and this decision of ours were probably overruled as to future cases by the holding in *General Motors Acceptance Corp. v. Jones*, 999 F.2d 63, 70 (3rd Cir.1993), that the appropriate interest rate to be applied to a Chapter 13 plan, under 11 U.S.C. § 1325(a)(5)(B)(ii), is the rate that the creditor would charge for a loan of similar character, amount, and duration, without consideration of the cost of its funds. *Id.* at 67.

Finally, Opinion I, 150 B.R. at 627-28, discussed the feasibility of the Debtor's plan. An important consideration relevant to this issue was the Debtor's history of two previous Chapter 13 cases which were dismissed

when she was unable to keep up the payments; the conversion of her third case to Chapter 7 when similar payment difficulties arose; and her inability to pay the $2,192 monthly figure to which she had committed herself in the early stages of this case. We partially agreed with Associates' skepticism of the Debtor's payment ability, even though her monthly payments were now reduced to $1,107.78. Therefore, we endeavored to protect Associates from subjection to a fifth case filing of the Debtor by allowing Associates to certify any payment default in the first 24 months to this court and providing that, if such a default were not promptly cured, this case would be dismissed and the Debtor would be precluded form filing another case for 180 days after dismissal. *Id.* at 628. *See In re Frieouf*, 938 F.2d 1099, 1104 (10th Cir.1991), *cert. denied sub nom. Frieouf v. United States*, —— U.S. ——, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992) (180 day preclusion from re-filings is the longest duration of such a ban by a bankruptcy court which can be authorized).

The Debtor did agree to file an amended plan including these rather extraordinary protections to Associates. The Court's affirmance of the feasibility of the Plan, including these provisions, is, we believe, very significant. Since the Debtor has succeeded in producing a plan which is feasible, as well as otherwise unobjectionable, it appears rather ironic to upset it on the basis of an issue raised and rejected earlier in the case and not reiterated until an appeal was taken almost a year later.

The Court states in the introductory statement regarding its Legal Analysis, quoted at page 6 *supra*, that the issue of whether the Debtor's multiple filings violated the "good faith" requirement of 11 U.S.C. § 1325(a)(3) was raised on appeal for the first time. It was for this reason that the Court remanded this matter to us.[2]

---

**2.** This statement of the Court may create tension with the principle that issues cannot be raised on appeal that have not been raised and properly preserved below, particularly when "the raising of the issue would have permitted the parties to develop a factual record." *In re American Biomaterials Corp.*, 954 F.2d 919, 917–28 (3rd Cir.

1992). *See also Taylor v. Freeland & Kronz*, [—— U.S. ——, ——,] 112 S.Ct. 1644, 1649[, 118 L.Ed.2d 280] (1993); and *In re Resyn Corp.*, 851 F.2d 660, 664 (3rd Cir.1988). In any event, we recognize our duty to adhere to the letter and spirit of the Court's decision on remand. *See,*

Thus, Associates has a *fourth* opportunity to raise the multiple filing/good faith issue since it was initially disposed of in our unappealed May Order, entered over a year and a half ago. We thus approach the discussion of the good faith issue with the observation that Associates has had as many opportunities to raise the multiple filing/good faith issue as the Debtor has had attempts to make a bankruptcy filing which results in a confirmable plan.

## C. *FACTS DEVELOPED ON REMAND*

The only witness at the November 4, 1993, hearing on remand was the Debtor. As in the past, the Debtor impressed us as forthright, practical, and realistic about the difficulties of her status as the sole head of a household containing thirteen dependents. She described in detail what we would characterize as a plethora of unfortunate occurrences which prevented her from ultimate success with her prior three filings under the Bankruptcy Code.

In her first case, filed on March 3, 1988, the Debtor alleges that she was represented by inadequate counsel. This case was subsequently dismissed following the death of her attorney, John Hayter, Esquire, and upon the failure of this attorney's non-lawyer assistant, Michael Turner, to file requisite documents.[3] Shortly thereafter, the Debtor became a college student, was on public assistance, and was eligible for services from Delaware County Legal Assistance Association ("DCLAA"), an agency providing free legal services to indigent persons in that County.

At the time of the Debtor's second filing in 1989, she was represented by an attorney from DCLAA. She had by then obtained employment at Mercy Health Plan and had income sufficient to propose a Chapter 13 Plan. This Plan contemplated a mortgage payment of $2,191.00 per month, based on the assumption that the value of the Home, and thus the amount of Associates' secured debt, was $100,000.00. The Debtor made payments under this Plan until she became ill with what she described as a "placenta previa" and was unable to work for about nine months. She testified that she had paid approximately $8,700.00 into that Plan before she became disabled. At this point, receiving benefits which constituted only about sixty-five (65%) percent of her previous salary, the Debtor fell behind in her payments and the case was ultimately dismissed.

The Debtor's third bankruptcy was filed in April, 1991. The Debtor was at that time re-employed by Mercy Health Plan, and she was no longer eligible for free legal services from DCLAA. She was then referred to a private attorney. The Debtor made payments on this plan until she again became disabled due to the complete loss of her voice, which again prevented her from working for about nine or ten months. Since she was not receiving even any unemployment benefits from her employer during this disability, she was advised by her attorney to convert her case to a Chapter 7 liquidation, which she did.

In May, 1992, having reacquired her employment with Mercy Health Plan, the Debtor regained her confidence that she could save her home after all, and she consulted her present counsel, Mary Jeffery. At this time, her present counsel developed a new strategy. It was determined that the Debtor should have the Home appraised, and pay off the value of the Home in her plan. Pursuant to the May Order, referenced at page 919 *supra*, she was obliged to pay $2,192 monthly to save her home, but this had been based on a $100,000 presumed value of the Home.

The appraisal, which Associates agreed was accurate, ultimately fixed the value of the Home, to the Debtor's surprise, at only $60,000. As a result, the Debtor was faced, for the first time, with the prospect of making much lower monthly payments to Associates than she and her past and present counsel had anticipated. The strategy of present

---

*e.g., Blasband v. Rales,* 979 F.2d 324, 327–28 (3rd Cir.1992).

**3.** The chaotic state of Mr. Hayter's former office is well-known to this court. We also note that, on December 17, 1993, this court enjoined Michael Turner from unauthorized practice of law and forbade him from continuing to assist persons filing bankruptcy, even under the supervision of an attorney, without express permission from this court after motion.

counsel, plus her continued employment at Mercy Health Plan and restored health, placed the Debtor in a far more favorable position than she had been in her previous cases.

After the hearing of November 4, 1993, we allowed the Debtor until November 18, 1993, to file an Opening Brief; Associates until December 2, 1993, to file its Brief; and the Debtor until December 9, 1993, to file a Reply Brief. The Debtor chose not to avail herself of the opportunity to file the last Brief, although the other Briefs were filed in timely fashion.

### D. *DISCUSSION*

1. *THIS COURT HAS PREVIOUSLY HELD THAT THERE IS NO "GOOD FAITH" FILING REQUIREMENT IN CHAPTER 13, AND THAT THE "GOOD FAITH" REQUIREMENT FOR PLAN CONFIRMATION RELATES PRINCIPALLY TO A DEBTOR'S HONESTY AND POTENTIAL ABILITY TO PROPOSE A CONFIRMABLE PLAN, WHICH REQUIREMENTS THE DEBTOR CLEARLY MEETS.*

Because the issue of the Debtor's purported lack of good faith in filing this case in light of her previous three unsuccessful cases was not raised in this court, the Court did not have the benefit of this court's views on this subject in rendering Opinion II.

At the threshold, we have some uncertainty about the sense in which the Court referenced "good faith." In the passage at the beginning of its Legal Analysis quoted at page 920 *supra*, the Court referenced the good faith requirement for plan confirmation, which appears at 11 U.S.C. § 1325(a)(3). However, near the end of Opinion II, the Court states that, "[a]lthough we are dubious whether [the Debtor] *filed her Chapter 13 case* in good faith, this determination, in the first instance, is not ours to make" (emphasis added). Opinion II, 158 B.R. at 607. This appears to reference a good faith filing requirement.

This court, in *In re Ford,* 78 B.R. 729, 733 (Bankr.E.D.Pa.1987), quoting an earlier opinion of Chief Judge Twardowski to the same effect, *In re Flick,* 14 B.R. 912, 916 (Bankr. E.D.Pa.1981), has pointed out that there is no good faith filing requirement in Chapter 13 cases.

With respect to the requirement that a plan be proposed in good faith set forth in § 1325(a)(3), we concluded, in *In re Gathright,* 67 B.R. 384, 387–88 (Bankr.E.D.Pa. 1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987), that

> [w]ith Collier, we believe that "[t]he phrase 'good faith' as it appears in section 1325(a)(3) is entitled to its historical meaning" in the predecessor Bankruptcy Act, *i.e.,* as relating solely to "debtor misconduct [in the bankruptcy proceeding], such as fraudulent misrepresentations or serious nondisclosures of material facts." 5 COLLIER ON BANKRUPTCY, § 1325.-04, at 1325–12, 1325–10 (15th ed. 1986).[4]

The criteria for good faith, as referenced in § 1325(a)(3), is thusly described in only slightly broader terms by Judge Fox in *In re March,* 83 B.R. 270, 275 (Bankr.E.D.Pa. 1988):

> I conclude that the scope of good faith inquiry must be limited to those factors which address (1) whether the debtor has deliberately misinformed the court of facts material to confirmation of the plan; (2) whether the debtor intends to effectuate the plan as proposed and (3) whether the proposed plan is for a purpose not permitted under the Bankruptcy Code. *See [Education Assistance Corp. v.] Zellner* [, 827 F.2d 1222 (8th Cir.1987) ]; *Barnes* [ *v. Whelan,* 689 F.2d 193 (D.C.Cir.1982) ].

These conclusions are consistent with the following statements of the Third Circuit Court of Appeals, construing the term "good faith" in the context of the Bankruptcy Act:

> "Good faith imports an honest intention on the part of the petitioner, ... whether it was reasonable to expect that a plan could be effected; that there was opportunity and need for reorganization; and that the

---

4. The same passage presently appears in the current edition of Collier at 5 COLLIER ON BANK-

RUPTCY, § 1325.04, at 1325–20 to 1325–21 (15th ed. 1993).

petition was filed with the honest intention of effecting it...." *In re Business Finance Corp.,* 451 F.2d 829, 834 (3d Cir. 1971) (quoting *In re Julius Roehrs Co.,* 115 F.2d 723, 724 (3d Cir.1940)).

None of these authorities are cited in Opinion II. It appears that neither of the parties ever cited these decisions to the Court.

■ The good faith issues raised by this case are easily resolved under the principles established in the foregoing authorities. There is no good faith filing requirement. The problem of abusive multiple filings is addressed by 11 U.S.C. § 109(g), and cases not within the precise bounds of that Code section are simply not prohibited. *See In re Samuel,* 77 B.R. 520, 522–23 (Bankr.E.D.Pa. 1987). As the Supreme Court held, confirming such reasoning, in *Johnson v. Home State Bank,* 501 U.S. 78, ——, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991):

> Congress has expressly prohibited various forms of serial filings. *See, e.g.,* 11 U.S.C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing). The absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief. *Cf. United States v. Smith,* 499 U.S. [160], [166], 111 S.Ct. 1180, [1185], 113 L.Ed.2d 134 (1991) (expressly enumerated exceptions presumed to be exclusive).

As the Supreme Court suggests in passages immediately following, at *id.,* bankruptcy courts have many tools at their disposal to preclude abusive filings. One method is by invoking Federal Rule of Bankruptcy Procedure 9011. *See In re Narod,* 138 B.R. 478, 481–82 (E.D.Pa.1992). Another is the utilization of orders which, like the provisions which this court required to be appended to the instant Plan, preclude further fil-

ings if certain commitments of a debtor are not kept.

■ With respect to the inquiries necessary to be made to determine whether the Debtor's plan was proposed in good faith, as required by § 1325(a)(3), we find that the Debtor has been honest and forthright in pursuing the instant bankruptcy case. She has disclosed all material facts. She not only intends to effectuate her Plan, but she has done so now for nine months after confirmation. This court has held, and the Court has affirmed, that the Plan is not only permissible under the Code, but also is feasible for her to perform.

Therefore, it appears that the Debtor meets the good faith requirements which this court has set down in the past.

### 2. THE DEBTOR ALSO SATISFIED THE SPECIFIC CONSIDERATIONS FOR A SHOWING OF GOOD FAITH SET FORTH IN THE DISTRICT COURT'S OPINION.

The Court, in its remand mandate, has set forth several specific considerations which this court must consider to determine whether the requisite good faith is present. We must also carefully consider them.

■ First, the Court suggests that this court may wish to conceptualize all of the Debtor's four filings strung together and considered as one case for determining whether the limitation on the length of a plan, as set forth as follows in 11 U.S.C. § 1322(c), is satisfied:

> (c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

We note, at the outset, that § 1322(c) refers to "[t]he plan" proposed in a particular case, and not a series of plans proposed in a number of cases. There is nothing in the language of § 1322(c) or § 109(g), or elsewhere in the Code, to suggest that several filings should be combined in a § 1322(c) analysis.

Opinion II references several cases where courts, presented with serial cases with serial plans that are identical with, or very similar to, plans proposed in prior cases, have so reasoned. *See In re Huerta,* 137 B.R. 356, 370–71 (Bankr.C.D.Cal.1992); *In re Thomas,* 123 B.R. 552, 553–54 (Bankr.W.D.Tex.1991); and *In re Jackson,* 91 B.R. 473, 474 (Bankr. N.D.Ill.1988). However, not only do we question the soundness of those cases, but also we believe that the instant facts would not lend themselves to the reasoning suggested therein.

First, as is noted two paragraphs above, this reading of § 1322(c) significantly expands its language. On its face, this Code section applies only to the particular plan in the particular case in issue. The Debtor argues in her current post-hearing Brief, with some force, that the reasoning of these cases is contrary to that which pervades *Johnson v. Home State Bank, supra.* Multiple filings are not prohibited by the Code. Code sections exist which can prevent abuses in multiple filings. 501 U.S. at ——, 111 S.Ct. at 2156. Section 1322(c) is not among the Code sections cited by the Court as bases to check the filing of sequential cases. The provisions expressly enumerated by the Supreme Court may possibly be presumed to be exclusive in the mind of that Court.

■ Second, the purpose of § 1322(c) is to prevent the veritable involuntary servitude which Congress envisioned could result if plans longer than five years in length were permitted. *See In re Capodanno,* 94 B.R. 62, 67 (Bankr.E.D.Pa.1988); and 5 COLLIER, *supra,* § 1322.15, at 1322–40, quoting H.R.REP. NO. 595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6077. In *Capodanno,* we noted, 94 B.R. at 66–67, that a Code section enacted to prevent involuntary servitude should not be transformed into a Code section to prevent low-income debtors, who often need the full 60–month period to resolve a mortgage delinquency, from utilizing the Code to save their homes.

Third, the only appellate court which has considered the issue, *In re Martin,* 156 B.R. 47, 51 (9th Cir. BAP 1993), has rejected the reasoning of *Huerta, Thomas,* and *Jackson,* holding that

[n]either § 1322(c) nor the legislative history conditions the time limitation of § 1322(c) in the event of multiple filings. That section merely states that, "[t ]he plan may not provide for payments over a period" of over three years, of, if appropriate, a longer period not to exceed five years. 11 U.S.C. § 1322(c) (emphasis added). As stated, the Chapter 13 plan in question does not exceed this time period.

Finally, we note that the reasoning of *Huerta, Thomas,* and *Jackson* is inapplicable to the instant fact situation. The Plan conceived by the Debtor, with the assistance of present counsel, is much different from, and easier for the Debtor to comply with than, her previous plans. The previous plans contemplated payments of almost double the $1,107.78 monthly payments called for in the instant Plan.

The combination of the present Plan as a means of satisfying the Debtor's complete mortgage obligation and the provisions of the Plan, added per this court's directives, requiring dismissal with prejudice if the Plan's terms are not satisfied, virtually assures that the instant case will not be succeeded by yet another case filed by this Debtor. If the Plan is successful, the mortgage on the Home will be liquidated. If it fails, the Debtor's last chance to save the Home will be exhausted.

Therefore, we conclude that § 1322(c) should not be a factor in determining whether the instant case was proposed in good faith.

The Court has also specifically directed that we consider the issue of good faith in light of listings of several considerations which certain other courts have developed. Perhaps the most complete list of considerations proposed for utilization in measuring good faith, for purposes of § 1325(a)(3), appears in *In re Estus,* 695 F.2d 311, 317 (8th Cir.1982), as follows:

(1) the amount of the proposed payments, and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Accord, Flygare v. Boulden,* 709 F.2d 1344, 1347–48 (10th Cir.1983); and *In re Kitchens,* 702 F.2d 885, 888–89 (11th Cir.1983). Other courts have adopted their own shortened-version laundry-lists. *See Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982); and *In re Rimgale,* 669 F.2d 426, 432–33 (7th Cir. 1982). *Cf.* J. Flacus, *Have Eight Circuits Shorted? Good Faith and Chapter 11 Bankruptcy Petitions,* 67 AMER.BANKR.L.J. 401, 402–04 (1993).

Although noting § 1325(a)(3) as its reference point, the Court, in Opinion II, 158 B.R. at 607, cites to two cases which have developed a laundry list of considerations which they posit should be weighed in determining whether a case has been *filed* in good faith, *In re Schuldies,* 122 B.R. 100, 103 (D.S.D. 1990); and *Huerta, supra,* 137 B.R. at 368. The "non-exhaustive" list developed in these cases and reiterated by the Court includes the following:

(1) the length of time between the prior cases and the present one;

(2) whether the successive cases were filed to obtain the favorable treatment afforded by the automatic stay;

(3) the effort made to comply with prior case plans;

(4) the fact that Congress intended the debtor to achieve its goals in a single case; and

(5) any other facts the court finds relevant relating to the debtor's purposes in making successive filings.

The Court further stated that this court should not lose sight of the totality of the circumstances surrounding the filing "to determine whether the plan constitutes an abuse of the provisions, purpose, or spirit of Chapter 13," citing *In re Metz,* 820 F.2d 1495, 1498 (9th Cir.1987); and *Flygare, supra,* 709 F.2d at 1347.

We hold that, applying these considerations, the Debtor's case was not filed in bad faith, nor was her plan proposed in bad faith.

Applying the *Schuldies/Huerta* considerations to the facts at hand, we note that the length of time between the Debtor's cases has spanned 1988 to 1993, a period of five years. Of course, the benefits of the automatic stay were sought by the Debtor. She is candid in stating that the goal of her filings has been to save the Home. However, she has made substantial efforts to comply with the terms of her plans. She has made substantial payments. In the category of "other facts" relevant to the Debtor's need for successive filings are the Debtor's reasons for her successive filings: two severe illnesses, her consequent losses of income and employment which were devastating to her single-income household, her need to change lawyers because of death of her original attorney and changes of her income, and her inability to find an attorney able to put together a plan which was feasible for her to perform in the long run prior to her present counsel. We see no indication that Congress intended persons beset with such impediments to be bound by the actions of earlier counsel and disqualified from acting on the superior advice of present counsel. In sum, we find no justification for dismissal of this case in application of the *Schuldies/Huerta* consider-

ations. Nor do we find that the provisions, purpose, or spirit of Chapter 13 is in any way compromised by allowing this case to proceed.

Most of the considerations referenced in *Estus* regarding good faith under § 1325(a)(3) are not relevant to the issues flagged by the Court in Opinion II. The "surplus" of plan payments is not an issue because the Debtor has very few debts remaining other than that to Associates in light of her prior Chapter 7 discharge. The Debtor's employment history, although interrupted twice for extended illnesses, now appears stable. Her same employer, Mercy Health Plan, has repeatedly hired her back after these illnesses, reflecting a perceived value of her services. The duration of the Plan is fixed at the maximum of five years. Preferences are not an issue. There is no allegation that the Schedules and Chapter 13 Statement filed by the Debtor were inaccurate or were misleading to the court or any creditors. Modification of a secured debt is planned. However, no debts non-dischargeable in Chapter 7 are in issue. The Debtor has had some medical problems, but those appear to be behind her. Although the Debtor has filed bankruptcy with a certain degree of frequency, her motivation and sincerity in saving a home for thirteen dependents is impeccable. The instant plan, contemplating mostly direct payments to Associates, presents virtually no administrative burdens to the Trustee. Nor has he objected to confirmation of the Plan at any time.

In summary, considerations (3), (6), and (9) set forth in *Estus, see* pages 925–26 *supra,* are potentially indicative of a lack of good faith, but most are neutral, and considerations (4), (8), (10), and (11) are strongly in favor of a finding of good faith. Thus, most considerations, except factors relating to her successive filings, favor a finding of the Debtor's good faith. Only if we adopted a *per se* rule against successive filings would these considerations be weighty enough to result in a finding of bad faith on the part of the Debtor in proposing her Plan. Therefore, any rule but a *per se* rule against successive filings, which the Court expressly rejects, Opinion II, 158 B.R. at 606; *accord, Johnson v. Home State Bank, supra,* 501 U.S. at ——, 111 S.Ct. at 2156, would result in a finding that the Debtor is proceeding in good faith.

## D. CONCLUSION

Having thoroughly examined the Debtor's good faith in filing this case and proposing her Plan, as the Court has directed us to do on remand, we find that we must reinstate our Order of April 6, 1993, confirming the Debtor's Plan.