**In re Samuel DAMI, Debtor.**

**Bankruptcy No. 94–13814 DWS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 23, 1994.

Jonathan A. Van Loan, Frazer, PA, for debtor.

Karen Lee Turner, Philadelphia, PA, for Nat. Penn Bank.

Edward Sparkman, Chapter 13 Trustee, Philadelphia, PA.

## MEMORANDUM OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion of National Penn Bank, f/k/a National Bank of Boyertown ("Movant") for Dismissal of Bankruptcy for Bad Faith Filing or, in the Alternative, Relief from the Automatic Stay of 11 U.S.C. § 362 and Motion to Enjoin the Use of Cash Collateral (the "Motion"). Based on the record made at the hearing held on July 26, 1994 and August 1, 1994, we grant the Motion and dismiss the Debtor's bankruptcy case with prejudice.

### BACKGROUND.

The facts, while numerous, are not in dispute. The Debtor Samuel Dami presently has an ownership interest in two businesses: Pottstown Petroleum Corp. and Samrocks. These businesses sell heating oil to residential customers and industrial sites in bulk. The businesses operate out of a building at 61 Robinson Street, Pottstown, Montgomery County, Pennsylvania (the "Premises") owned by Debtor and Joan Yocom, Debtor's former wife.

On April 30, 1987, Movant made a $100,000 loan (the "Loan") to Debtor and Yocom secured by a mortgage on the Premises and certain business assets of Samuel D. Dami, t/a Dami Trucking Co. Exhibits M–11 and M–12. Additionally on various dates in 1987, Movant made a series of four loans to Debtor individually and trading as Dami Trucking Company (the "Other Loans"). The Other

Loans were secured by trucks owned by the Debtor. Movant also alleges that a blanket lien on the assets of Dami Trucking and a mortgage on the Premises was granted to secure one of the Other Loans and a mortgage on the Premises was given to secure another. Around June, 1992, the Debtor, with the consent of Movant, auctioned the trucks and paid the proceeds to Movant. It is not clear what happened to the other business assets but they do not appear to be available to satisfy Debtor's obligations to Movant.[1]

It is undisputed that balances remain on the Loans although Debtor was not prepared to concede the amount, and that the balances are secured by the Premises. Judgment was taken against Debtor in the amount of $168,388.58 on November 24, 1992.[2] Exhibit M–11. A scheduled sheriff's sale of the Premises was stayed by the instant bankruptcy case.

While the Debtor was somewhat vague during his examination by Movant's counsel about the number and timing of his various sojourns through bankruptcy,[3] the complete history of his four bankruptcy filings and Movant's efforts to obtain relief to exercise its remedies under its various notes and mortgages has been admitted in Debtor's Answer to the Motion as follows:

1. December 17, 1990—Chapter 13 # 1 filed.

2. February 28, 1991—Movant granted relief from stay.

3. March 5, 1991—Chapter 13 voluntarily dismissed.

4. April 11, 1991—Chapter 13 # 2 filed.

5. July 19, 1991—Stipulation relating to use of cash collateral.

6. December 18, 1991—Movant granted relief from stay and use of cash collateral enjoined.

7. December 19, 1991—Chapter 13 dismissed on Trustee motion.

8. December 20, 1991—Chapter 13 # 3 filed.

9. January 24, 1992—Movant denied relief from stay.

10. March 26, 1992—Movant granted relief from stay upon reconsideration.

11. April 6, 1992—Debtor denied reinstatement of stay and Temporary Restraining Order.

12. June 18, 1992—Movant granted relief from stay in Yocom bankruptcy.

13. August 27, 1992—Chapter 13 dismissed.

14. August 27, 1992—Foreclosure action revived.

15. November 24, 1992—Judgment in foreclosure by default.

16. January 28, 1994—Writ of execution entered.

17. March 16, 1994—Scheduled sheriff's sale continued until June 16, 1994.

18. June 14, 1994—Chapter 13 # 4 filed.

Conspicuous in this chronology is the absence of activity from the November, 1992 foreclosure judgment to the resumption of execution activities in January, 1994. Debtor would have this Court conclude that this period represents a resting by Movant on its rights which entitles Debtor to some equitable consideration. On the contrary, we accept Movant's credible explanation that during the period it was securing an environmental assessment of the Premises to avoid any exposure should it become an "owner" of the Premises upon foreclosure under applicable environmental laws. Rather than being

1. There was no testimony about Debtor's use of Movant's cash collateral and Movant does not appear to be pursuing its request for an order enjoining use of cash collateral. Since Debtor individually is not operating a business presently, we do not know what cash collateral there possibly could be.

2. This judgment allegedly relates to the Loan. Movant identified as Exhibits M–11 and M–12 various documents relating to its notes, mortgages and judgments. We cannot tie them to the

averments of the Motion. For example, we also note judgments of $151,281.90 and $32,215.62 on July 3, 1990 and $98,521.92 on February 10, 1993.

3. Debtor testified that he could recall two filings in addition to the instant case and that the last filing he believed was within the last year. Only one prior case, i.e., No. 91–24658T filed on January 2, 1991, was disclosed in Debtor's Petition.

prejudiced by this forbearance, Debtor has obtained its benefit since he continued to occupy the Premises without making any payments to Movant. Indeed the record shows that Debtor has not made a regular full payment to Movant since October, 1990. From June, 1991 through April, 1992, excepting September, 1991, the Debtor made principal payments only. The last payment was made on June 4, 1992 upon the sale of the trucks. Exhibit M–9.

It is Movant's position that the loans are matured and therefore would have to be paid in full in Debtor's Chapter 13 Plan. Debtor, on the other hand, contends that the Mortgage Loan was to be renewed every five years, merely resetting the interest rate. Relying on that position, his Chapter 13 Plan provides for the monthly payment of interest only. The testimony established that the Debtor has not contacted Movant about his defaulted loans for several years. According to the Debtor, there was no point in talking to Movant since Movant insisted on full payment of the indebtedness. Rather Debtor has filed this and his other bankruptcy cases as devices to bring Movant to the bargaining table to negotiate a reduction of his indebtedness.

While the Debtor testified that he filed this case to "pay back the Bank, keep his property and then honor his other obligations", his performance of his duties as a Chapter 13 debtor, which at best can be characterized as inadequate, suggest otherwise. Indeed we find that his Schedules are replete with misstatements and omissions. Specifically, the Schedules are deficient in the following respects:

1. With respect to his assets, Schedule B, ¶ 12 reflects no stock or interest in an incorporated business when he admits he is one of three shareholders of Pottstown Petroleum and Samrocks. He also acknowledges interests in three undisclosed, non-operating companies, one of which owns four trailers. He failed to disclose his interest in his partnership with Yocom claiming it was inactive although it is the partnership that actually owns the Premises. Apparently a security deposit of $500 was not listed nor was his ownership of a 1984 volkswagen, the omission of which he blames on his attorney.[4]

2. With respect to liabilities, Debtor only lists the Bank, affirmatively stating that he has no creditors holding unsecured priority or non-priority claims. In fact, Debtor has many other creditors. On examination by the Bank's attorney, he acknowledged that he was indebted to the Internal Revenue Service (the "IRS") and was currently making payments of $700 monthly on account of those obligations for which the IRS holds liens. GMAC has a judgment against him for $3620, as does John Deere for $5048. He also owes $10,000–$12,000 to the Commonwealth of Pennsylvania and $35,000 to Fuel Transportation, Inc. His explanations for failing to disclose these obligations, certain of which had been disclosed in a prior bankruptcy case, were that he had payout arrangements with the creditor (e.g., IRS), he forgot (e.g. GMAC, John Deere) and/or that his partner was also obligated to pay (e.g. Fuel Transportation).

3. His Schedule I—Current Income (Exhibit M–2) reflects current monthly income of $2925 but his testimony indicated that his current monthly income from all sources is $3400. He was unable to explain the discrepancy and could only state that he did not review Schedule I.

4. His Schedule J—Current Expenditures (Exhibit M–3) reflects rent of $200 which should be $400 (He claims not to have reviewed the schedule), and no taxes or installment payments being made when he testified to monthly installment payments of $700 to the IRS.

5. His Chapter 13 Plan (Exhibit M–3) was not even signed by the Debtor. On examination, he claimed no knowledge of its provisions and cannot answer where it provides for the Trustee's fee, payment of priority claims or what the basis of the $1430.80 contemplated payment to Movant is ("I don't know where my attorney got it.") other than to state that such amount would be where he would start negotiations with Movant.

4. Debtor had a tendency to blame his lawyer when he was unable to adequately explain his conduct. We do not accept Debtor's attempts to shift responsibility from himself to his lawyer.

*DISCUSSION.*

While Movant has sought relief in the alternative, Movant urged the Court to dismiss this case with prejudice as its preferred remedy. Because we agree that this case is a bad faith Chapter 13 filing, we do not hesitate to do so. Our reasons are set forth below. Since we will dismiss the case, we need not address Movant's request for relief from stay.

A Chapter 13 petition filed in bad faith may be dismissed "for cause" pursuant to 11 U.S.C. § 1307(c). *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994); *In re Gier*, 986 F.2d 1326, 1329 (10th Cir.1993); *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). To determine if a petition has been filed in bad faith courts are guided by the same standards used to determine whether a plan has been filed in bad faith. 11 U.S.C. § 1325(a)(3). *Curry*, 14 F.3d at 470; *Gier*, 986 F.2d at 1329. To ascertain the existence of bad faith we must review the "totality of the circumstances", asking whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner." *Curry*, 14 F.3d at 470 (quoting *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir.1982)). *See also In re March*, 83 B.R. 270, 274 (Bankr. E.D.Pa.1988). A debtor's history of filings and dismissals is probative of bad faith. *In re Oglesby*, 158 B.R. 602 (E.D.Pa.), *on remand*, 161 B.R. 917 (Bankr.E.D.Pa.1993).[5]

Where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose, bad faith exists.

The record recited above clearly demonstrates that the Debtor filed his petition in bad faith. Clearly there is no integrity to Debtor's schedules or plan which are false and misleading. These documents call into question the integrity of this Chapter 13 filing. Given Debtor's prior experience with the requirements of Chapter 13, his excuses for not providing a full and accurate account of his assets and liabilities are lame and incredible.[6] They are cold evidence of the absence of any intention on the part of the Debtor to reorganize under Chapter 13. Rather they support our conclusion that Debtor used this filing, as he did the ones that preceded it, as a device to frustrate and obstruct Movant in the hope that he could bring it to the bargaining table to get the relief refused to him outside of bankruptcy, i.e., a compromise of the debt.

Debtor's conduct in this latest filing is sufficiently egregious to support dismissal of the case under § 1307(c).[7] However, when considered in the context of his other three bankruptcy filings over three and one half years which were strategically timed to block Movant's foreclosures, all dismissed without any serious reorganization effort, and the absence of any change of circumstance to warrant a fresh start in bankruptcy, we believe more than dismissal is warranted. It is

---

**5.** Recognizing that there is no one established set of good faith factors, the *Oglesby* Court provides a non-exhaustive list of considerations to be utilized in measuring the good faith of multiple filings:

   (1) the length of time between the prior cases and the present one;

   (2) whether the successive cases were filed to obtain favorable treatment afforded by the automatic stay;

   (3) the effort made to comply with prior case plans;

   (4) the fact that Congress intended the debtor to achieve its goals in a single case;

   (5) any other facts the court finds relevant relating to the debtor's purpose in making successive filings.

158 B.R. at 607.

**6.** Debtor's counsel's view that the Debtor was not accountable for the accuracy of these schedules until the § 341 Meeting is not only rejected but reflects, if believed, a startling ignorance of the law. We will give Debtor's counsel the benefit of the doubt and assume that he got carried away by his own advocacy and did not counsel Debtor to file under oath false and misleading schedules under the misguided belief that a liberal amendment policy will cure such misfeasance.

**7.** Movant also argues that given Debtor's liabilities, a feasible reorganization plan is not within Debtor's reach. We suspect that is true but we need not reach that issue because Debtor has not filed a bona fide Chapter 13 Plan. His Chapter 13 Plan appears to be a piece of paper prepared by his attorney (and not even signed by him) to superficially comply with the filing requirements of the Code and Rules.

apparent to us that more is necessary lest the debtor refile and begin the cycle anew.

■ We recognize that there is no *per se* rule against serial filings. *See Johnson v. Home State Bank*, 501 U.S. 78, 87–88, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991). A genuine change of circumstances may warrant further bankruptcy relief. *See In re Oglesby*, 158 B.R. at 606 (citing *In re Metz*, 820 F.2d 1495, 1498 (9th Cir.1987)). However, this is the precise type of bankruptcy recidivism that mocks the bankruptcy system. There can be no question that Debtor's conduct is a flagrant abuse of the automatic stay provisions of the Bankruptcy Code, interposed for the sole purpose of harassment and delay and intended to cause Movant great cost and expense.

In such a case, Bankruptcy Rule 9011,[8] incorporating Fed.R.Civ.P. 11 provides the authority for the sanctions that Movant seeks.[9] As the Court in *In re Jones*, 117 B.R. 415, 420 (Bankr.N.D.Ind.1990) stated:

[W]here a debtor files a petition in bankruptcy with no intention of obtaining the benefits or the goals for which the proceeding was designed or with no intention of pursuing those proceeding[s] to their natural conclusion, the bankruptcy code is being abused and bankruptcy rule 9011 is being violated.

■ In *In re Narod*, 138 B.R. 478, 482 (E.D.Pa.1992), our district court recognized that sanctions imposed under Rule 9011 are not limited to expenses or fees. Remanding the case back to the bankruptcy court for a determination of whether Section 109(g) applied, the Court observed:

In the event that the bankruptcy court determines that section 109(g) is inapplicable, such a finding will not necessarily limit the court's ability to preclude, under Rule 9011, bankruptcy filings by Narod within 180 days or whatever time period the court deems reasonable.

Other courts have relied on their discretionary power under Section 349, *see, e.g., In re McKissie*, 103 B.R. 189, 193 (Bankr.N.D.Ill. 1989); or Section 105, *see, e.g., In re Earl*, 140 B.R. 728, 741 (Bankr.N.D.Ind.1992), to enjoin future filings to prevent abuse of the bankruptcy process. The Court's ability to impose this sanction is necessary to maintain the integrity of the bankruptcy process and avoid burdening the court's docket with frivolous cases, thereby depleting valuable and limited court resources which could be channeled to meritorious cases.

Having found that the Debtor has misstated his assets, debts and expenses and unfairly manipulated the Bankruptcy Code, we conclude that this Chapter 13 case constitutes an abuse of the provisions, purpose and spirit of Chapter 13. As such, we will dismiss the case with prejudice and enter an order barring Debtor from filing for relief under the Bankruptcy Code for 180 days without leave of this Court.

An Order consistent with the foregoing Opinion will be entered.

---

8. Rule 9011 provides:
   Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party ... shall be signed.... A party who is not represented by an attorney shall sign all papers and state his address and telephone number. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanctions, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

9. Congress sought to combat abusive multiple Chapter 13 filings by enacting Section 109(g) which bars individuals from being debtors for a period of 180 days if their case was dismissed for willful failure to comply with a court order, or if a voluntary dismissal is obtained subsequent to the filing of a motion for relief from stay. Section 109(g) is not broad enough here where the Debtor's last case was involuntarily dismissed.

### ORDER

**AND NOW,** this 23rd day of August, 1994, upon consideration of the Motion of National Penn Bank, f/k/a National Bank of Boyertown for Dismissal of Bankruptcy for Bad Faith Filing or, in the Alternative, Relief from the Automatic Stay of 11 U.S.C. § 362 and Motion to Enjoin the Use of Cash Collateral (the "Motion"), and the record of the hearing of this matter, and for the reasons stated in the accompanying Opinion, it is hereby **ORDERED** that:

1. National Penn Bank's Motion is hereby **GRANTED;**

2. Debtor's Chapter 13 bankruptcy case is hereby **DISMISSED WITH PREJUDICE;** and

3. Debtor may not file a petition for relief under the Bankruptcy Code for 180 days from the date of this Order without leave of this Court.