**In re Nelson Ardean MERRILL, SSN 526–68–3990, Helen Marie Merrill, SSN 521–70–1312, Debtors.**

**Bankruptcy No. 95–16609 MSK.**

United States Bankruptcy Court, D. Colorado.

Oct. 16, 1995.

Wallace, Jordan, Ratliff, Byers and Brandt, Birmingham, Alabama, for plaintiff.

William A. Ratliff and Jay Clark, Birmingham, Alabama, for First Commercial Bank.

Troy L. Grayson, Birmingham, Alabama, for defendant.

## MEMORANDUM OPINION AND ORDER DISMISSING CASE

MARCIA S. KRIEGER, Bankruptcy Judge.

THIS MATTER comes before the Court on the Colorado Department of Revenue's Motion to Dismiss this Chapter 13 case with prejudice (Motion). The Debtors object.

An evidentiary hearing was held on September 13, 1995. The Colorado Department of Revenue (Department) appeared by Neil L. Tillquist, Assistant Attorney General for the State of Colorado. The Debtors appeared by Andrew L. Cameron. Legal argument on the issue of the authority of the Court to dismiss with prejudice was made by written briefs filed by both parties after the hearing.

### I. JURISDICTION

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### II. FINDINGS OF FACT

1. This Chapter 13 case was filed by the Debtors on June 29, 1995.

2. This is the Debtors' sixth Chapter 13 case and seventh bankruptcy case filed in the last eight years. A summary of the Debtors' history in this Court is set forth below:

| Case No. | Chapter | Date Filed | Conclusion | Date of Conclusion |
|---|---|---|---|---|
| 87–B–15850–J | 13 | 12/31/87 | Dismissed | 9/19/89 |
| 89–B–13855–J | 13 | 10/11/89 | Dismissed | 9/18/91 |
| 91–25344–RJB | 13 | 11/19/91 | Dismissed | 4/23/92 |
| 92–17381–DEC | 7 | 6/11/92 | Discharge | 10/7/92 |
| 93–11196–PAC | 13 | 2/5/93 | Dismissed | 12/31/93 |
| 94–16185–SBB | 13 | 6/21/94 | Dismissed | 1/4/95 |
| 95–16609–MSK | 13 | 6/29/95 | | |

3. Each of the Debtors' prior Chapter 13 cases was involuntarily dismissed due to the Debtors' default in making payments under a confirmed plan. The pattern is the same in each case. The Debtors defaulted in making payments shortly after confirmation. The Chapter 13 Trustee or a creditor filed a motion to dismiss or notified the Debtors of the default. The Debtors promised to cure the arrearage and resume making payments, but shortly thereafter defaulted again and the case was dismissed on the motion of the Chapter 13 Trustee. There was no evidence that the Debtors ever sought to amend their confirmed plans, to convert or to voluntarily dismiss their cases. Within one to six months after each dismissal, the Debtors re-filed.

4. After the first three Chapter 13 cases were dismissed, Debtors obtained a discharge of some debts through Chapter 7. The Chapter 7 case was followed by three more Chapter 13 cases, including this case. During the prior Chapter 13 cases, the Debtors paid the sum of $16,156, but no evidence

was presented as to how much of this amount was paid to creditors, in contrast to the Debtors' attorneys and to the Chapter 13 Trustee.

5. Despite the discharge in the Chapter 7 case, each successive Chapter 13 plan required a larger monthly payment. The plan in the 1987 case required $311 and the plan in the 1994 case required $790 per month.

6. The Debtors attribute their inability to complete their prior five Chapter 13 plans to a variety of factors. In 1988, Mr. Merrill was laid-off work for 5½ months. In 1989, Mr. Merrill was out of work for seven months due to health problems. With regard to the cases filed in 1991 and 1993, the Debtors underestimated the amount necessary to pay their federal tax liability. With regard to the 1994 case, the Debtors could not meet their attorney's demand for payment of fees during the case and they contend they were poorly represented.

7. During the largest part of the last eight years, the Debtors' employment has remained stable and their income has increased. Mrs. Merrill has been employed by a single employer for the past 25 years; Mr. Merrill has held his current job since 1988. During the past five years, the Debtors' income has ranged from $45,000 to $49,000 per year. On schedules filed in this case the Debtors show one dependent, net income of $2,963 and expenses of $2,147 per month.

8. The Debtors filed this case in response to the Department's refusal to participate in an out-of-court workout and the resulting levy on Mrs. Merrill's wages. Debtors propose a five-year plan which requires a monthly payment of $816 (approximately $25/month more than the plan confirmed in the 1994 case). The debts in this case are predominantly tax obligations for the years 1987 through 1994, but also include approximately $2,300 in unsecured debts for 1992 insufficient funds checks. Mrs. Merrill requested

and the Court ordered that plan payments be made by payroll deduction from Mrs. Merrill's wages. Debtors delivered a money order to the standing Chapter 13 Trustee for $816 and are current in their preconfirmation payments.

## III. ANALYSIS

The Department seeks dismissal of this case for bad faith. The only evidence of bad faith is the Debtors' history of bankruptcy filings and dismissals. The Debtors argue that the case should not be dismissed because the filing of this case was justified and the proposed plan is feasible due to the wage assignment.

### A. Dismissal

■ Section 1307(c) provides a nonexhaustive list of grounds upon which a bankruptcy court may dismiss a Chapter 13 case for "cause". Bad faith is not among the itemized grounds but nonetheless constitutes cause for dismissal. *Eisen v. Curry (In re Eisen)*, 14 F.3d 469 (9th Cir.1994); *In re Gier*, 986 F.2d 1326 (10th Cir.1993); *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983).

■ Lack of good faith exists either when a debtor files a petition without intending to perform the statutory obligations of a debtor under the Bankruptcy Code or when a debtor's conduct before or during a case constitutes an abuse of the provisions, purpose or spirit of the chapter under which relief is sought. *Gier, supra* 986 F.2d at 1329 (quoting from *In re Love*, 957 F.2d 1350 (7th Cir.1992)). Evidence of bad faith can take many forms. Therefore in determining whether a case has been filed or pursued in bad faith, a court must consider the totality of the circumstances. *Gier, supra; Flygare, supra.* *Flygare* sets out a nonexhaustive list of factors which is indicative of a debtor's good or bad faith.[1]

---

1. (1) the amount of the proposed payments and the amount of the debtor's surplus;
(2) the debtor's employment history, ability to earn and likelihood of future increases in income;
(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
(5) the extent of preferential treatment between classes of creditors;
(6) the extent to which secured claims are modified;

██ Multiple or successive filings do not necessarily constitute bad faith. *Johnson v. Home State Bank,* 501 U.S. 78, 87, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991); *In re Rasmussen,* 888 F.2d 703, 705 (10th Cir. 1989). However, a debtor's history of filings and dismissals may be evidence of a debtor's bad faith. *See In re Oglesby,* 158 B.R. 602 (E.D.Pa.1993); *In re Earl,* 140 B.R. 728 (Bankr.N.D.Ind.1992). When a debtor has serial petitions, dismissal for bad faith may be avoided if the debtor shows a change of circumstances between filings. *See In re Armwood,* 175 B.R. 779 (Bankr.N.D.Ga. 1994); *In re Jones,* 105 B.R. 1007 (N.D.Ala. 1989). Past filings and dismissals are circumstantial evidence of a debtor's motivation and ability to perform obligations under the Code. A debtor's performance in prior Chapter 13 cases is probative of a debtor's ability and motivation to repay creditors.

Most of the *Flygare* factors are inapplicable because the only evidence of bad faith is the Debtors' history of repetitive bankruptcy filings and dismissals. No reported decision in this circuit addresses this situation. However, the District Court for the Eastern District of Pennsylvania endorsed a nonexhaustive list of considerations for cases such as this in *Oglesby, supra* 158 B.R. at 607. The *Oglesby* factors are:

1. The length of time between prior cases and the present one;

2. Whether successive cases were filed to obtain favorable treatment afforded by the automatic stay;

3. The effort made to comply with prior case plan;

4. The fact that Congress intended the debtor to achieve its goals in a single case; and

5. Any other facts the courts find relevant relating to the debtor's purpose in making the successive filings.

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
(8) the existence of special circumstances such as inordinate medical expenses;
(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

Applying the *Oglesby* and the applicable *Flygare* factors to the facts of this case, I conclude dismissal for bad faith is warranted. Over the last eight years, the Debtors have repeatedly invoked the protection of the Code for the ostensible purpose of repaying creditors under Chapter 13. The Debtors have had ample opportunity to repay their creditors but consistently failed to do so. Five times they proposed, confirmed and failed to make the required payments under Chapter 13 plans. Each prior Chapter 13 case was involuntarily dismissed due to Debtors' default after they were given an opportunity to cure the arrearage. The Debtors never modified the terms of their confirmed plans after recognizing they could not perform according to the terms of a plan, or sought to voluntarily dismiss or convert. The time between the dismissal of each case and the next case varied from one to six months, resulting in cumulative bankruptcy protection for 74 of the last 93 months. Strikingly, this pattern even continued in the two Chapter 13 cases filed after the Debtors obtained a discharge in a Chapter 7 case. Bluntly stated, the Debtors have enjoyed the benefits of bankruptcy protection without fulfilling their promises to creditors.

While the Debtors have explanations for their failure to complete each plan, they assume no personal responsibility for their default. Each explanation is directed at an event or circumstance purportedly beyond the Debtors' control. While the interruption of employment in 1988 and 1989 understandably caused a default, the explanations for their default under the plans confirmed in the 1991, 1993 and 1994 cases are not credible. In the 1991 and 1993 cases, the Debtors contend they failed to correctly estimate the amount required to be paid to the Internal Revenue Service (IRS). Yet, prior to filing the 1991 case, the Debtors had filed two previous cases in which they had identified the claims of the IRS. Prior to filing the

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
(11) the burden which the plan's administration would place upon the trustee.

1993 case, the Debtors had filed four bankruptcy cases. Debtors offer no explanation why they were unable to calculate from their prior filings, alone, the amount owed to the IRS. With regard to the 1994 case, the Debtors may have had difficulty with their lawyer, but difficulty with one's attorney does not explain the Debtors' default in payments. The Court is left with the impression that the Debtors do not know or are unwilling to acknowledge the problems which caused their defaults under five prior Chapter 13 plans. Without such recognition, the pattern is most likely to repeat in this case.

More importantly, the Debtors fail to demonstrate that their motivation and ability to pay in this case is any different than in their prior cases. The Debtors' current income and employment is substantially the same as during the last four cases. Most of the debts scheduled in this case are the same as in the last three cases. The only differences between this case and prior cases are that the proposed monthly payment is higher than that of prior cases, this case was filed as a result of the Department's levy on Mrs. Merrill's wages and Mrs. Merrill has consented to a wage assignment.

None of these differences satisfy the Court that the Debtors' ability and motivation to repay their creditors through Chapter 13 has changed. Despite consistent employment and income, the Debtors have been unable to pay lower monthly payments under every prior plan. While the Department's actions preceding the filing of this case explain why the Debtors filed their case, such evidence is not relevant to the Debtors' ability or motivation to pay creditors. The wage assignment assures funding for the Chapter 13 plan proposed in this case only so long as it is in effect, but the wage assignment is voluntary,

Mrs. Merrill can discontinue it at any time. The proposed plan consumes all of the Debtors' surplus income and stretches a full five years, making the Debtors' performance vulnerable to the least hiccup in income or expenses.

The Court is mindful that the Debtors have paid a substantial sum in the course of their prior five cases. But the significance of such payment must be considered in light of what creditors actually received. No evidence as to the dividends paid to creditors was presented. All of the debts to be paid in this case are the remnants of prior cases. In short, the Debtors have failed to establish changed circumstances which demonstrate that their ability and motivation to repay creditors in Chapter 13 is greater than it was in their five prior Chapter 13 cases.

### B. Nature of the Dismissal

The Department requests dismissal of this case be made "with prejudice". The Department specifically requests the Court bar the Debtors from filing another case for 180 days or longer. The Department concedes that 11 U.S.C. § 109(g), which specifically authorizes the Court to determine that Debtors are ineligible for bankruptcy relief for a period of 180 days, is inapplicable.[2] Therefore, the Department requests a bar to refiling either as a sanction under Fed.R.Bankr.P. 9011 or as an equitable remedy under 11 U.S.C. § 105.

The problem of repetitive bankruptcy filings is well known and much bemoaned by creditors and courts, alike. *See Johnson v. Home State Bank, supra; In re Nash,* 765 F.2d 1410 (9th Cir.1985). The broad and powerful protections afforded a debtor under bankruptcy law are counterbalanced by a

---

**2.** The Department's supplementary brief states:
[B]y its express terms, § 109(g) addresses the circumstance where, during the course of the case, the debtor refuses to obey a court "order" or fails to appear before the court.... The Department is unaware of any court order that the Debtors in the present case may have violated; nor does the Department assert such violation. Rather, the Department asserts that the present case was filed in bad faith and pursuant to § 1307(c), should be dismissed with prejudice.

The Department submits that a case filed in bad faith is not based on the willful violation of a prior court order, but, rather, is based on the filing [of] the case itself. A case filed in bad faith can be one in which the debtor has no intent to reorganize but simply desires to use the automatic stay to avoid collection, or uses the bankruptcy process in a manner inconsistent with the purpose or spirit of the Code. In other words, a finding of bad faith need not rely on the fact that the debtor has refused to obey a court order.

debtor's duties to facilitate a liquidation under Chapter 7 or accomplish a reorganization and repayment through a plan under Chapters 9, 11, 12 and 13. The purpose of Chapter 13 is to afford an honest debtor confronted with financial distress with a breather period while providing creditors with an equitable and predictable repayment.

When a debtor seeks and enjoys the protection of the Bankruptcy Code without intending to or performing his or her obligations to disclose, to facilitate a liquidation or to accomplish a repayment program, the debtor abuses both the system and the creditors. Such abuse is multiplied when a debtor repetitively files bankruptcy cases without concluding the process of liquidation or repayment. Repetitive, unsuccessful bankruptcy cases delay creditors, consume judicial resources and flaunt the generous right granted under the Bankruptcy Code. In response, courts have employed the provisions of Fed.R.Bankr.P. 9011 and 11 U.S.C. § 105 as well as their own ingenuity to punish abusers and forestall future abuse.

Though this case exemplifies the abusive effect of repetitive bankruptcy cases, the Court is nonetheless constrained in fashioning a remedy. For the following reasons, I conclude that neither Fed.R.Bankr.P. 9011 nor 11 U.S.C. § 105 empowers me to prohibit these Debtors from filing subsequent bankruptcy cases.

### C. Rule 9011

█ The Department argues that a dismissal "with prejudice" should be used as a sanction for the Debtors' violation of Rule 9011. The Department relies upon *In re Dami*, 172 B.R. 6 (Bankr.E.D.Pa.1994), in which a bankruptcy court dismissed a Chapter 13 case for bad faith, and under Rule 9011 barred the debtor from filing a subsequent case for 180 days.

*Dami* is factually distinguishable. In *Dami*, a creditor sought dismissal of a debtor's fourth Chapter 13 case. Unlike this case, the evidence of bad faith exceeded the debtor's prior history of bankruptcy filings. The court found the purpose of each case was to bring a recalcitrant creditor to the negotiating table, the debtor's schedules were insufficient and the proposed plan was not signed by the debtor. The court found that the debtor filed the petition without any intent of reorganizing or repaying creditors. The bankruptcy court imposed the time bar to the debtor's refiling pursuant to Rule 9011 in reliance on *dicta* in a District Court opinion in the same jurisdiction. *In re Narod*, 138 B.R. 478, 482 (E.D.Pa.1992).

█ While Rule 9011 may be used for the imposition of sanctions for certain kinds of bad faith, it is not a catch-all provision under which the Court may impose sanctions for every abuse. Imposition of sanctions under Rule 9011 is limited to circumstances when a party or an attorney files a pleading which is 1) premised on facts not properly investigated, 2) is not well-grounded in fact, warranted by existing law or a good faith argument for extension, modification or reversal of the existing law, or 3) is interposed for an improper purpose. *In re Endrex*, 111 B.R. 939, 945–46 (D.Colo.1990). Rule 9011 permits an award of sanctions only against a person who signs a specified pleading in violation of the Rule. *In re Chisholm Co.*, 166 B.R. 706, 713 (D.Colo.1994). In order for Rule 9011 to be applied, the nonconforming pleading must be identified and the party seeking relief must establish that filing the pleading was not objectively reasonable. *Endrex, supra* 111 B.R. at 946.

The Department has not identified the nonconforming portion of any pleading filed in this case nor established that the filing of any pleading was unreasonable. Unlike the facts in *Dami*, the Court has not found that Debtors lacked the intent to reorganize when they filed the petition for this or prior cases.

### D. 11 U.S.C. § 105

█ The Department argues, alternatively, that the equitable powers under § 105 should be used to punish these Debtors and prevent future abuse. Despite the Debtors' bad faith, I conclude the broad equitable powers of § 105 do not empower me to bar subsequent bankruptcy filings by these Debtors.

Section 105 provides that:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

■ Although § 105 grants bankruptcy courts broad equitable powers, such authority is not unlimited. Section 105 only allows a court to procedurally supplement or enforce rights and remedies created by the Code. It does not empower the Court to create new rights or remedies when Congress has failed to do so. *In re NWFX, Inc.*, 864 F.2d 593, 595 (8th Cir.1989); *In re Back Bay Restorations, Inc.*, 118 B.R. 166 (Bankr.D.Mass. 1990).

■ Although abuse of the bankruptcy system and creditors by frequent or repeat filers is a well-known problem, Congress has not chosen to combat the problem by authorizing courts to bar abusive debtors from future bankruptcy relief. The two applicable Code provisions are §§ 349(a) and 109(g). Section 349 contains two clauses linked by a semicolon.

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Although other courts have concluded differently, the binding precedent in this circuit interprets the two clauses as separate sentences. *In re Frieouf*, 938 F.2d 1099, 1103 (10th Cir.1991). Under such interpretation, in dismissing a case a bankruptcy court may deny a debtor future discharge of debts, but may not limit the filing of a subsequent petition except as provided in § 109(g).

■ Under § 109(g), a court may determine that a debtor is ineligible for bankruptcy relief for a period of 180 days when: 1) a debtor has willfully violated a court order; 2) failed to prosecute a case; or 3) voluntarily dismissed the case after a creditor has filed a motion for relief from stay. There is no reference in § 109(g) to repetitive filings or dismissal under circumstances of bad faith. Some behavior which justifies dismissal for bad faith may fall within these provisions, but I agree with the Department that dismissal for bad faith based upon serial filings does not fall within the § 109(g) parameters.

In technical terms, the concept of a "dismissal with prejudice" is a term with meaning only in a litigation context. According to BLACK'S LAW DICTIONARY 421 (5th ed 1979), a dismissal with prejudice is "an adjudication on the merits, and final disposition, barring the right to bring or maintain an action on the same claim or cause. It is *res judicata* as to every matter litigated." Dismissal with prejudice is a variation of the order of dismissal authorized by Fed.R.Civ.P. 41, which is applicable in bankruptcy only to adversary proceedings and contested matters.

■ Dismissal of a bankruptcy case is governed solely by the Code. Dismissal with a bar to refiling is an extreme remedy to be invoked with caution and restraint. The Tenth Circuit notes in *Frieouf* that enjoining bankruptcy filings raises serious constitutional concerns. An injunction against future filings is, in essence, a dismissal of a case before it is filed. Because a debtor's creditors may change from time-to-time, a bar to future filings prevents a debtor from restructuring or discharging debts not affected by bad faith in prior cases. In addition, a court ordinarily must consider the circumstances of each case prior to dismissal. Even when there is a pattern of repetitive filings, a given case may survive a motion to dismiss due to genuine changed circumstances. *In re Oglesby*, 158 B.R. at 606. An injunction against refiling presumes future bad faith without any factual finding.

The Code provides a more finely tuned, albeit less effective, remedy for a debtor's abuse of the bankruptcy system by repetitive filings by authorizing a court to deny or limit

discharge in conjunction with dismissal of a case. 11 U.S.C. 349(a). *Frieouf,* 938 F.2d 1099, 1103 (10th Cir.1991). Sometimes called the "capital punishment of bankruptcy", denial of discharge for some or all debts removes much of the benefit of bankruptcy. Creditors holding nondischargeable debts may be delayed in collection by subsequent bankruptcy filings, but their ultimate rights are left unchanged. Like a dismissal with prejudice in a lawsuit, the denial of discharge is a final disposition of a debtor's bankruptcy rights. Most important, when discharge is denied, creditors retain their ability to use an involuntary bankruptcy as a collection tool, which right is extinguished if a debtor is made ineligible for future bankruptcy relief.

The Department holds a nondischargeable debt and, therefore, does not request denial of the Debtors' discharge of debts in conjunction with dismissal. Although the Department may prefer to have a guaranteed window of time in which to collect from the Debtors while they are not protected by the Bankruptcy Code, neither Bankruptcy Rule 9011 nor § 105 authorizes this Court to bar their future bankruptcy filings.

This conclusion is not an invitation to the Debtors to file another Chapter 13 case. Absent a demonstrated change in their circumstances, motivation and ability to pay creditors, any future Chapter 13 case will suffer from the same bad faith found here.

**IT IS ORDERED** that this case is **DISMISSED.**