**IN RE: Ramon Dominguez JUAREZ, Debtor.**

**Alta Vista, LLC, Movant,**

**v.**

**Ramon Dominguez Juarez, Respondent.**

**Case No. 15–10030 HRT**

United States Bankruptcy Court, D. Colorado.

Signed July 2, 2015

Stephen E. Berken, Denver, CO, Richard N. Gonzales, Westminster, CO, for Debtor.

## *ORDER ON MOTION FOR RELIEF FROM STAY*

Howard R. Tallman, Judge, United States Bankruptcy Court

THIS MATTER comes before the Court on the Motion for Relief from Stay filed by creditor Alta Vista, LLC, ("Alta Vista") on March 18, 2015 (docket # 47), and the response filed by Debtor on April 7, 2015 (docket # 54). An evidentiary hearing was held on June 3, 2015, at the conclusion of which the Court took the matter under advisement. The Court is now ready to rule.

## I. BACKGROUND

Alta Vista is the holder of three promissory notes executed by Debtor and secured by three properties located in Holyoke, Colorado. The first note, dated February 15, 2002, in the principal amount of $68,250, is secured by Debtor's home (26549 County Road 43) and a commercial building (444 East Denver). The second note, dated December 23, 2003, in the principal amount of $34,149.60, is secured by a mobile home park owned by Debtor (129 N. Worley Avenue). The third note, dated December 31, 2003, in the principal amount of $34,165.65, is secured by all three properties.

Debtor first filed a Chapter 13 petition on July 11, 2013 (Case No.13–21856–HRT). Despite entering an appearance on August 8, 2013, Alta Vista did not object to confirmation, and a plan was confirmed on August 30, 2013. Debtor began making payments under the plan, both to the Chapter 13 Trustee and directly to Alta Vista (*See* docket # 85 in Case No.13–21856–HRT). On November 19, 2013, Alta Vista filed two proofs of claim: one in the amount of $23,254.70, and one in the amount of $66,689.47. (*See* Claim # 7–1 and Claim # 8–1 in Case No.13–21856–HRT). In February, 2014, Debtor moved to modify the plan, stating his intention to "allow for the correct amount owing to Alta Vista . . . and to the Phillips County Treasurer." Alta Vista objected to the modification and moved to dismiss, arguing Debtor had failed to pay the correct amounts to Alta Vista during the plan period. Alta Vista also contended Debtor had failed to properly disclose his interest in an apartment building owned with his son. A hearing was set on the modification motion and objection but, after moving to extend the hearing date several times, in August, 2014, the parties informed the Court they had reached a stipulation (docket # 67, Case No.13–21856–HRT). Debtor withdrew his objection to Alta Vista's motion to dismiss, and the case was dismissed on November 26, 2014.

On January 2, 2015, Alta Vista moved to foreclose on the mobile home park and commercial property (Ex. 8, Ex. 9) under state law. Debtor filed the present Chapter 13 case on January 5, 2015. In his schedules, Debtor valued his home at $102,510; the commercial building at $117,000; and the mobile home park at $90,000. Alta Vista's latest proof of claim filed in the case (Claim # 10–2) estimates the value of the three properties at $310,000, and lists its secured claim as $26,928.91. Earlier-filed proofs of claim estimate Alta Vista's secured claim to be $89,273.40 on the commercial building and the home (Claim # 6–2), and $29,491.24 on

the mobile home park (Claim # 7–2). Adding the three proofs of claim results in a total secured claim of $145,693.55. At the hearing, Debtor provided an exhibit estimating the payoff amounts on the three loans to be $59,349 on the residence and commercial property, $18,097 on the mobile home park, and $21,485 on the "second mortgage" on the residence, for a total of $98,931.[1]

Debtor filed his Chapter 13 Plan on January 13, 2015 (the "Plan"). Under the Plan, Debtor would pay future earnings to the Chapter 13 Trustee of $1,200 per month for 60 months. The Plan provided for payment of $14,081 to Alta Vista to cure past defaults. Debtor would make certain regular payments directly to Alta Vista pursuant to the Plan on a monthly basis.

On February 3, 2015, Alta Vista filed a motion under 11 U.S.C. § 362(j) seeking an order under 11 U.S.C. § 362(c)(3) that the automatic stay had terminated, by operation of law, due to the fact that the Debtor had sought bankruptcy relief within the prior year.[2] The same day, Debtor filed a motion to extend the stay under § 362(c)(3)(B)[3] The Court denied the Debtor's § 362(c)(3)(B) motion as untimely. On February 4, 2015, the Court entered an order confirming the termination of the automatic stay under § 362(c)(3)(A). In its order, the Court cited *In re Holcomb*, 380 B.R. 813 (10th Cir. BAP 2008), in order to alert the parties to case law in the Tenth Circuit that significantly limits the scope of stay termination under § 362(c)(3)(A). Alta Vista filed a motion to reconsider, arguing this Court should reexamine *Holcomb* and rule that the stay should terminate with respect to property of the estate, not just as to property of the debtor. The Court denied the motion to reconsider on February 24, 2015 (docket # 43).[4]

On March 18, 2015, Alta Vista filed the instant motion for relief from stay, seeking

---

1. Debtor has objected to Alta Vista's proofs of claim, and a further hearing will be set on the objections.

2. That section provides in relevant part that

   if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1–year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

   (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case....

   11 U.S.C. § 362(c)(3)(A).

3. That section provides:

   on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30–day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed....

   11 U.S.C. § 362(c)(3)(B).

4. A motion under 11 U.S.C. § 362(j) seeks nothing more than a declaration that the conditions for termination of the stay under § 362(c)(3) have been met. In the case of *In re Holcomb*, 380 B.R. 813 (10th Cir. BAP 2008), the Tenth Circuit's Bankruptcy Appellate Panel held that, where § 362(c)(3) is applicable, the stay is only lifted as to the debtor and the debtor's property but that § 362(c)(3) does not lift the stay as to property of the bankruptcy estate. By alerting the parties to that holding, the Court neither adopted or rejected the *Holcomb* court's conclusions. Nor would it be proper for the Court to do so in the context of a motion under § 362(j) because of the very limited scope of such a motion.

relief for cause under § 362(d)(1). Alta Vista argues "cause" exists to grant relief from stay due to Debtor's bad faith filing, citing *In re Merrill*, 192 B.R. 245 (Bankr. D.Colo.1995). Alta Vista argues that the dismissal of Debtor's previous case was "for failure to complete plan payments" and "inaccurately prepared bankruptcy schedules" and that dismissal under those circumstances is evidence of bad faith. Alta Vista further contends that no meaningful change in Debtor's financial condition has occurred.

In Debtor's response, he alleges he filed both cases in good faith, and attributes errors in the first filing to the lack of complete information. Additionally, Debtor states he had a heart attack and allowed his case to be dismissed in order to seek a solution to his dispute with Alta Vista outside of bankruptcy by possibly selling one of the properties. However, according to the Debtor, medical bills and Alta Vista's renewed foreclosure proceedings caused him to re-file. Finally, Debtor notes he made adequate payments to the Chapter 13 Trustee and to Alta Vista, but Alta Vista did not credit any payments to his escrow account, resulting in a property tax deficiency.

At the hearing, Debtor defended his good faith in filing both plans. Counsel emphasized that Alta Vista received over $5,000 under Debtor's first Chapter 13 plan and that it is slated to receive payment on all obligations under Debtor's amended plan, filed on April 8, 2015 (the "Amended Plan").

The Amended Plan proposes to pay all disposable income of $1,200 to the trustee for 6 months, with the payment increasing to $1,750 thereafter for the remaining plan period of 54 months. The defaults on the first and second mortgages on the home are to be cured within 10 months, and the defaults on the mobile home and commercial building are to be cured in 8 months.[5]

Alta Vista contends the Amended Plan is not feasible and the bankruptcy was filed only to stymie Alta Vista's efforts to foreclose. Alta Vista did not specifically make arguments concerning a lack of equity in the properties or whether the properties were necessary to an effective reorganization. It expressed concerns that a lease with the tenant of the commercial building was due to expire soon but it provided no evidence as to how the lease expiration would affect Alta Vista's interest in the collateral.

The Court heard testimony from Debtor and from the principal of Alta Vista, Mr. Zamarippa. An additional witness, Ms. Mendoza, provided testimony concerning circumstances surrounding the loans made from Alta Vista to Debtor. Generally, the testimony concerned whether Alta Vista should be considered a "predatory lender" or an altruistic community member in connection with the three promissory notes executed by Debtor. The parties also presented some evidence and testimony as to changed circumstances between the two filings. Primarily, however, Alta Vista focused on Debtor's repeat filing as evidence of bad faith, and argued for the incorporation of the provisions of § 362(c)(3) into § 362(d)(1).

## II. DISCUSSION

Section 362 provides, in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362(a)], such as by terminating, annulling, modifying, or conditioning such stay—

**5.** A further hearing will be set on confirmation and Alta Vista's objection.

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; (2) with respect to a stay of an act against property under [§ 362(a)], if—

> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization. . . .

11 U.S.C. § 362(d).

Alta Vista contends Debtor filed his Chapter 13 petition in bad faith, and bad faith constitutes "cause" under § 362(d)(1). In support, Alta Vista cites several Chapter 11 cases holding that a bad faith filing constitutes cause for relief from stay under § 362(d)(1), including *In re Pacific Rim Investments, LLP,* 243 B.R. 768 (D.Colo. 2000); *In re Gunnison Center Apts., LP,* 320 B.R. 391 (Bankr.D.Colo.2005); and *In re Springs Hospitality, Inc.,* · 2006 WL 2458679 (Bankr.D.Colo.2006). Alta Vista then posits that, since a debtor is statutorily presumed to have filed a bankruptcy petition in bad faith in certain instances of repeat filings under § 362(c)(3)(C), this Court should grant relief from stay for cause under § 362(d)(1).

■■■ As an initial matter, the Court agrees with Alta Vista that, where a court finds that a case has been filed in bad faith, such a finding would constitute cause for lifting the stay under § 362(d)(1). At, the same time, the Court rejects Alta Vista's argument that § 362(c)(3)(C) should be incorporated into § 362(d)(1) to provide the legal standard for a finding of bad faith filing. Both the specific language of § 362(c)(3)(C) and the structure of § 362 foreclose the argument.

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 1098, 119 Stat. 23 (Apr. 20, 2005) ("BAPCPA"), Congress provided for · termination of the automatic stay under certain circumstances in order to address problems with serial filings. Section 362(c)(3) provides generally that the automatic stay terminates, by operation of law, 30 days after a debtor files a second case within a single year.[6] To avoid that automatic termination, an interested party may file a motion under § 362(c)(3)(B) to extend the stay. Section 362(c)(3)(B) provides that the party seeking such extension must prove the second filing was in good faith as to the creditors to be stayed. When a motion for extension of the stay is timely filed, § 362(c)(3)(C) states that the second case is presumed not to have been filed in good faith and it prescribes the proof required to rebut that presumption.

The very first clause of § 362(c)(3)(C) limits its application specifically to motions for extension filed under § 362(c)(3)(B) because it states that it only applies "for purposes of subparagraph (B)." 11 U.S.C. § 362(c)(3)(C) ((referring to 11 U.S.C. § 362(c)(3)(B)). Moreover, § 362 makes specific provision for relief under § 362(d) where "the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B). That provision in § 362(d)(4)(B) would be wholly superfluous if Congress had intended to import § 362(c)(3)(C)'s presumption of bad faith based on multiple filing into § 362(d).

Thus, Alta Vista's argument that the § 362(c)(3)(C) lack of good faith presumption should equate to "cause" under § 362(d)(1) has no applicability to this case. The Court does note that in a recent

---

**6.** In *Holcomb,* though, the Bankruptcy Appellate Panel has interpreted that automatic termination very narrowly. *In re Holcomb,* 380 B.R. 813 (10th Cir. BAP 2008).

case, *In re Ford,* 522 B.R. 829 (Bankr. D.S.C.2014), the court held that

> The statutory presumption of bad faith found in § 362(c)(3)(C) "is limited in its application ... to the determination of whether the automatic stay should be extended." Therefore, a finding of good faith in the granting or denial of a § 362(c)(3)(B) motion to extend the automatic stay is not controlling as to the examination of good faith in the filing of the petition for other purposes. However, the Court's finding of good faith at the time of such a motion may be a persuasive factor in other contexts such as a determination of cause for relief from stay under § 362(d)(1) on the grounds of bad faith.

*Id.* at 838.

The Court agrees with the *Ford* court that, under certain circumstances, there may be an overlap. It stands to reason, where a debtor proves good faith under § 362(c)(3)(C) in the context of a motion for extension of the stay, that prior proof will be persuasive if good faith is later put at issue in a motion for relief from stay for cause under § 362(d)(1). But wholesale importation of § 362(c)(3)(C) into a cause analysis under § 362(d)(1) is impossible given the specific limitation on the application of § 362(c)(3)(C) to motions for extension under § 362(c)(3)(B).

In addition to arguing that the Court should import the lack of good faith presumption stated in § 362(c)(3)(C) into its § 362(d)(1) cause analysis, Alta Vista argues that "the presumptions that a debtor's repeat filing lacks good faith under the circumstances set forth in Section 362(c)(3) merely codify prior bankruptcy case law. Thus, even if this Court determines that the statutory presumptions set forth in

Section 362(c) are not conclusive as to a 'for cause' analysis under Section 362(d)(1), the facts giving rise to the statutory presumptions for purposes of Section 362(c)(3) establish that the Debtor lacked the requisite good faith when he filed the [second] petition."

Alta Vista cites a pre-BAPCPA Chapter 13 case for support, arguing as follows:

> In *In re Merrill,* 192 B.R. 245 (Bankr. D.Colo.1995), Judge Krieger considered a creditor's motion to dismiss a Chapter 13 debtor's repeat petition for lack of good faith. Judge Krieger recognized that the "good faith" test in the Chapter 13 test is governed by the "totality of the circumstances" test informed by the numerous *Flygare*[7] and *Gier*[8] factors.
>
> Judge Krieger stated: while "[m]ultiple or successive filings do not necessarily constitute bad faith ... a debtor's history of filings and dismissals may be evidence of a debtor's bad faith. When a debtor has serial petitions, dismissal for bad faith may be avoided if the debtor shows a change of circumstances between filings. Past filings and dismissals are circumstantial evidence of a debtor's motivation and ability to perform obligations under the Code. A debtor's performance in prior Chapter 13 cases is probative of a debtor's ability and motivation to repay creditors." *Id.* at 249 (internal citations omitted).

Motion for Relief from Stay Pursuant to 11 U.S.C. § 362(d)(1) (docket # 47), pp 6–7.

As Alta Vista further notes, in the *Merrill* case, the court found most of the *Flygare* and *Gier* factors inapplicable and observed that no case in this district had specifically addressed how allegations of bad faith arising from repeat filings and dismissals should be analyzed. Therefore,

---

**7.** *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983).

**8.** *In re Gier,* 986 F.2d 1326 (10th Cir.1993).

the court adopted factors considered by the court in the case of *In re Oglesby,* 158 B.R. 602 (E.D.Pa.1993):

1. The length of time between prior cases and the present one;

2. Whether successive cases were filed to obtain favorable treatment afforded by the automatic stay;

3. The effort made to comply with prior case plan;

4. The fact that Congress intended the debtor to achieve its goals in a single case; and

5. Any other facts the courts find relevant relating to the debtor's purpose in making the successive filings.

*In re Merrill,* 192 B.R. at 249 (citing *In re Oglesby,* 158 B.R. at 607)).

Alta Vista argues all factors weigh in its favor, because: (1) less than a month passed between filings; (2) the cases were filed shortly after foreclosure proceedings were started; (3) Debtor was in material payment default under the prior plan; (4) Debtor is not comporting with Congress' goals to achieve his goals in a timely manner, as it is now almost two years since the filing of the first case; and (5) bad faith is obvious from Debtor's lack of full disclosure in the first case and the lack of feasibility in the Debtor's proposed plans.

Debtor contends both *Merrill* and *Oglesby* involve more aggravated instances of multiple filings and were decided under the law as it stood before the enactment of the current version of § 362 under BAPCPA. In *Oglesby,* the district court remanded a case back to the bankruptcy court for a determination of good faith where the debtor had filed four Chapter 13 cases. In *Merrill* the court found bad faith where the debtor had six prior bankruptcy filings.

Alta Vista emphasizes that, in *Merrill,* the court dismissed a Chapter 13 case on the basis of bad faith where the only evidence of bad faith was the repeat filings. However, a close reading of the *Merrill* case demonstrates the court recognized the limitation of its holding. The court cited *In re Rasmussen,* 888 F.2d 703 (10th Cir.1989) for the proposition that "multiple or successive filings do not necessarily constitute bad faith . . . ." *Merrill,* 192 B.R. at 249. In *Rasmussen,* the Tenth Circuit specifically noted "the fact of successive filings does not, by itself, constitute bad faith in a Chapter 13 filing." *Rasmussen,* 888 F.2d at 706 (citing *In re Chaffin,* 816 F.2d 1070 (5th Cir.1987)). Additionally, the Chapter 11 cases cited by Alta Vista do not rely solely on repeat filings as evidence of bad faith. No allegation of repeat filing arose in either the *Pacific Rim Investments* case or the *Springs Hospitality* case. In those cases, bad faith was determined using the factors enumerated in § 1112(b)(4). *See Pacific Rim Investments,* 243 B.R. at 772 and *Springs Hospitality,* 2006 WL 2458679, at *2. In the *Gunnison Center* case, the court noted the debtor had previously filed for Chapter 11, but relied "primarily on those factors set forth in . . . *Pacific Rim." In re Gunnison Center Apts., LP,* 320 B.R. at 401 n. 11.

▪ Alta Vista's motion was based almost entirely on the repeat filing issue. The only other argument Alta Vista made in its motion concerned the alleged inaccurate disclosure of an apartment building owned by Debtor's son. The Court has examined the evidence presented, as well as the record in both of Debtor's cases, and cannot find that any inaccuracy is evidence of bad faith in filing either the first or second petitions. The apartment building was described in Schedule A of Debtor's first filing as "Apartments—Holyoke, CO; Property belongs to son but debtor is cosigner on note" and the estimated value of Debtor's interest was zero,

with a secured claim listed as $102,426. (docket # 9, Case No. 13–21856–HRT). In Debtor's second filing, he listed the apartment building at a specified street address, but otherwise the description, estimated value, and secured claim, is identical. - At the hearing, Alta Vista did not present any evidence as to the ownership of the apartments or their value. Thus the Court is unable to make any findings regarding Debtor's alleged inaccurate disclosure.

At the hearing, Alta Vista also made some contentions regarding whether or not Debtor had actually tried to list property for sale in between the filings. Again, there was not sufficient evidence presented to allow the Court to determine whether this was demonstrative of bad faith on Debtor's part. Finally, Alta Vista tried to elicit some testimony that the property was generally not in good shape but, again, while that might be relevant to a feasibility analysis upon confirmation, it does not assist the Court in making good faith determinations under § 362(d)(1).

The evidence the Court has seen indicates Debtor has filed his Chapter 13 petitions in good faith. The Court is persuaded by the reasoning set forth in *In re Galanis*, 334 B.R. 685 (Bankr.D.Utah 2005), cited by Debtor. In that post-BAPCPA case, the court determined, in a repeat filing case, that Debtors had demonstrated good faith by analyzing a number of factors.

First, the court looked at the period of time between the dismissal of the first case and the filing of the second. The court noted that a long period of time (for example, a year), with no concurrent intent to stay out of bankruptcy, would weigh against a finding of good faith because "[c]reditors incur substantial costs in seeking collections of their debts" and "[a] debtor who knows that he cannot pay his debts or these new collection costs would

be acting in bad faith by allowing the debts to mount." *Id.* at 695. Here, the prior case was dismissed on November 26, 2014, and the new petition was filed on January 5, 2015, a gap of some 42 days.

The second factor considered in *Galanis* was the nature of the debts. "This factor looks primarily to whether the debts arose from luxury spending, from reoccurring expenses, or whether they were the result of unavoidable costs, such as medical bills." *Id.* Here, the debts are largely secured as they were before. Any medical debts, further, represent legitimate, nonfrivolous, expenses.

Third, the *Galanis* court examined the debtor's motive in filing the new case. Debtor is proposing a 100% plan, which reflects his motive to pay his debts in full.

The fourth factor considered is the effect of the debtor's actions on creditors. The *Galanis* court observed that, "Filing for bankruptcy relief will almost always prejudice one's creditors." *Id.* at 696. However, where there is no depreciating collateral, the only prejudice to the creditor is that it is "not being paid at the moment." *Id.* In the instant case, Alta Vista will receive direct payment of ongoing mortgage payments and, upon confirmation, Alta Vista will be paid its mortgage arrears through the Amended Plan.

The next factor is the reason the prior case was dismissed. "If the prior case was dismissed for the debtor's attempts to manipulate the system or some other bad conduct, that would bear on whether the Present Case was not filed in good faith." *Id.* at 696. The Court finds no bad conduct here. Dismissal resulted from an inability to reconcile Debtor's understanding of the correct disbursement of his payments with information provided by Alta Vista. Under *Galanis*, this demonstrates that the Debtor did not act out of any

desire to manipulate the system or from other bad motive. This, too, demonstrates good faith in filing the new case.

Sixth, the court in *Galanis* considered the likelihood the debtor can fund and complete a confirmed Chapter 13 plan. As stated previously, while ultimately this issue remains to be determined at confirmation, at this juncture the Court cannot conclude the Amended Plan is unlikely to be performed.

Lastly, under *Galanis,* is the question of the position of the creditors. Alta Vista has objected, but it is the only creditor to do so. At worst, this factor neither strengthens nor weakens the evidence of good faith.

### III. CONCLUSION

The Court concludes that Alta Vista has not demonstrated sufficient grounds under § 362(d)(1) to grant it relief from the automatic stay. The evidence indicates that the Debtor's properties serving as Alta Vista's collateral have substantial equity, which provides adequate protection for Alta Vista's secured interests, even if specific payments to cure any arrearages have yet to be finalized by the plan confirmation process. The Court is also unpersuaded by Alta Vista's arguments that the provisions of § 362(c)(3) are presumptive grounds for granting it relief under § 362(d)(1). Therefore, it is

**ORDERED** that the Motion for Relief from Stay filed by creditor Alta Vista, LLC, (docket # 47) is DENIED.